No. 46,051

TRANSPORT INSURANCE COMPANY, a Corporation, *Appellant*, v. E. G. HUSTON, CHARLES F. CURRY REAL ESTATE COMPANY, a Corporation, and BALTIMORE AVENUE REALTY COMPANY, a Corporation, *Appellees*.

(486 P. 2d 1344)

Opinion filed July 16, 1971.

*John T. Flannagan*, of Payne and Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*Richard L. Reid*, of Kansas City, Kansas, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This is an action by plaintiff-appellant, a workmen's compensation insurance carrier, to recoup compensation paid by it to an injured workman for injuries caused by the alleged negligence of a third party, the defendant-appellee.

Appellant's capacity to maintain the action is based on the statutory assignment of the injured workman's cause of action to his employer wrought by K. S. A. 44-504 and the insurer's right of subrogation under K. S. A. 44-532. The workman failed to bring suit within the time allowed by 44-504, and his employer had been likewise inactive until this action was brought just five days before being barred by the statute of limitations. See *Wise v. Morgan-Mack Motor Co.*, 173 Kan. 372, 246 P. 2d 308. The amendments to those two sections found in Laws 1967, ch. 280, effective after this action was commenced, do not alter appellant's status, and its right to stand in the shoes of the injured workman is not challenged.

Liability of the appellee was predicated on its status as lessor of a truck terminal warehouse to the workman's employer. The injury was caused by a defect in the leased premises which was claimed to exist as the result of appellee's breach of a covenant to repair.

The case was tried to the court on a stipulation of facts. From a judgment denying recovery plaintiff has appealed.

Those facts relevant to our disposition of this appeal are set out in the following portion of the parties' stipulation below:

"3. On or about the 15th day of March, 1965, Charles R. Sharitz, while employed by Texas Oklahoma Express, Inc., and while engaged in its business and in the course of his employment, suffered personal injury which was compensable under the Kansas Workmen's Compensation Act. The Transport Insurance Company, a corporation, was the Workmen's Compensation Insurance Carrier for Texas Oklahoma Express, Inc., and under its contract of insurance with the insured, furnished Workmen's Compensation to Charles R. Sharitz in the form of compensation for temporary total disability and medical costs in the total sum of Three Thousand Eighteen Dollars and 41/100 ($3,018.41). Charles R. Sharitz did not commence an action for his injury against the defendants herein or anyone else within the time provided by statute, and likewise, Texas Oklahoma Express, Inc., did not commence any action for the injury to Charles R. Sharitz within the time provided by statute and, as a result thereof and by operation of law, the plaintiff, Transport Insurance Company, is entitled to bring this action in its own name and in its own behalf and for Charles R. Sharitz and Texas Oklahoma Express, Inc., for their benefit as their interests may appear. The Transport Insurance Company has an interest in its own right in this action in the amount of Three Thousand Eighteen Dollars and 41/100 ($,018.41) [sic] and no more; said amount having been paid by the plaintiff as aforesaid to Charles R. Sharitz for the damages sustained by him as alleged above. The plaintiff, although not required or requested, originally filed this action on behalf of Charles R. Sharitz as well as itself, but has now abandoned said action as far as the claim of Sharitz for damages is concerned.

"4. That Texas Oklahoma Express, Inc., occupied the premises where the accident occurred at One Woodsweather Road, Kansas City, Wyandotte County, Kansas, on the date of the accident as the lease tenant of the Baltimore Avenue Realty Company; that all of the obligations of said landlord and tenant relationship between Baltimore Avenue Realty Company and Texas Oklahoma Express, Inc., are delineated, set out, defined and contained in a certain lease dated August 6, 1952, executed by the defendant, E. G. Huston, as lessor, and Arkansas Motor Freight Lines, Inc., as lessee . . . [a copy of which was attached].

"5. That the original lessor, E. G. Huston, had conveyed said property and assigned said lease to the defendant, Baltimore Avenue Realty Company, and the Baltimore Avenue Realty Company was in fact the lessor under said lease of the property at the time of the accident; likewise, through a series of transfers, the Texas Oklahoma Express, Inc., had succeeded to the rights and

obligations of the original lessee, Arkansas Motor Freight Lines, Inc., so that on the date of the accident the lessor and lessee of said lease were respectively the defendant, Baltimore Avenue Realty Company and the plaintiff's insured, Texas Oklahoma Express, Inc.

"6. The defendant, Charles F. Curry Real Estate Company, is not a party to the aforesaid lease agreement, but is an agent for the owner of the property, to-wit: Baltimore Avenue Realty Company. The obligation of the Charles F. Curry Real Estate Company to the said Baltimore Avenue Realty Company was to collect rents, keep said premises insured, and notify its principal, Baltimore Avenue Realty Company, Inc., of any notices received under the terms of the aforesaid lease. That the said defendant, Charles F. Curry Real Estate Company had no power of control of the subject premises, and was never in possession of any part of said premises; that possession of the subject premises was exclusively in plaintiff's insured, Texas Oklahoma Express, Inc., at all times pertinent to this law suit.

"7. The accidental injury to Charles R. Sharitz on March 15, 1965, was caused by a bumper falling at Door # 20 on the South side of the building on the above described premises; that said bumper's primary use was to absorb the shock of trucks hitting the dock at Door # 20; that Texas Oklahoma Express, Inc., is a company engaged in the transport trucking business and subject premises are used as a terminal warehouse by it."

There were appended to the stipulation five letters from Texas Oklahoma Express, Inc., to the appellee's managing agent. Two of these were written before the accident in question and called attention to alleged defects in the premises. However, we do not deem the details of any of this correspondence relevant to our decision here.

Both parties recognize that Kansas has firmly embraced the rule contained in the American Law Institute's Restatement of the Law of Torts, § 357:

"A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

"(a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and

"(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented."

The judicial history culminating in our unqualified endorsement of this proposition is fully chronicled by Mr. Justice Fatzer in *Williams v. Davis,* 188 Kan. 385, 362 P. 2d 641, holding the doctrine applicable to a lease of any type of premises, whether residential or commercial. In its subsequent adoption of the Restatement of Torts, Second, the Institute adhered to the basic concept of § 357,

merely substituting "contracted" for "agreed" in clause (a), and adding as a further condition of liability that it arises only if "(c) the lessor fails to exercise reasonable care to perform his contract." We likewise adhere to the basic concept, and we accept the modifications as sound.

In *Williams v. Davis, supra*, we quoted with approval the comment and illustration accompanying § 357, which are retained as to the same section in the Restatement of Torts, Second. Particularly pertinent here is the statement:

"Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty."

It therefore becomes necessary to analyze the lessor's obligation to repair, as set forth in the lease. The critical provision is paragraph 19, which provides:

"19. MAINTENANCE OF EXTERIOR: LESSOR covenants and agrees to keep in repair the exterior parts of the buildings which are a part of the leased premises, including the roof, outer walls, downspouts and gutters, *except repairs required to remedy any defect or condition caused by acts of the LESSEE, its agents, servants and employees,* but shall be under no obligation to make any repairs to the exterior parts of the building until and unless the LESSEE notifies the LESSOR of the necessity thereof, in writing, in which event LESSOR shall cause such repairs to be made as promptly as possible." (Emphasis added.)

In its brief appellant urges that the emphasized portion of this paragraph is ambiguous and "should be given no effect whatsoever." But, "A cardinal rule in the construction of contracts is that they must be interpreted in light of their own peculiar provisions, and every provision must be construed, if possible, so as to be consistent with every other provision *and to give effect to all.*" (*Wiles v. Wiles,* 202 Kan. 613, 619, 452 P. 2d 271. Emphasis added.) The language in question was obviously inserted in the lease with some purpose in mind; it was a portion of one of seven typewritten paragraphs added to seventeen printed paragraphs of a form lease. We do not find in it the ambiguity asserted by appellant. We construe it as an exception to the lessor's obligation, requiring only a direct causal connection between the activities of the lessee and the defect to relieve the lessor of its duty to repair.

The trial court reached the same conclusion. In his letter opinion the trial judge first found that there had not been sufficient notice to the lessor of the existence of the defect—an issue we do not reach—and went on to say:

"Secondly, Paragraph 19 of the lease excepts from the repairs which lessor is obligated to make those which are required to remedy any defect or condition caused by acts of the lessee. The only reasonable assumption on the basis of the evidence presented is that a loose or damaged bumper would be caused by acts of the lessee, its agents, servants or employees in allowing the trucks to come in contact with those bumpers."

· The evidence the trial court had before it was, of course, the stipulation of facts quoted from above. Paragraph 6 of the stipulation put the lessee in exclusive possession of the premises; paragraph 7 indicated that the purpose of the guilty bumper was to absorb the shock of trucks hitting the dock, and that the lessee was engaged in the trucking transport business, using the premises as a terminal warehouse. It was from these facts that the trial court concluded that a loose or damaged bumper would be "caused by the acts of the lessee, its agents, servants or employees" in allowing trucks to come in contact with it.

We believe this was a permissible inference from the stipulated facts. This being so, the defect or condition came squarely within the exception to the lessor's covenant to repair, and there could be no liability on its part to the injured workman and hence none to appellant.

The judgment is affirmed.

APPROVED BY THE COURT.