(561 P.2d 880)

No. 48,387

THOMAS HAMILTON, *Appellant,* v. DANIEL S. LING, *Appellee.*

Petition for review denied April 4, 1977.

Opinion filed February 25, 1977.

*David J. Berkowitz* and *Forrest W. Shea* of Lawrence, for the appellant.

*Thomas V. Murray* and *John A. Emerson* of Barber, Emerson, Six, Springer & Zinn, of Lawrence, for the appellee.

SPENCER, J.: This case involves the liability of a landlord for personal injuries suffered by a social guest of his tenants as a result of a fall on defective steps attached to the front porch of leased premises. Trial to the court on the issue of liability only resulted in judgment for the defendant. Plaintiff has appealed.

The facts as determined by the trial court are in substance that on August 1, 1971, the defendant became the owner of premises at 1312 Kentucky Street, Lawrence, Kansas, on which there was a two-story dwelling formerly used as a single-family residence. The first floor consisted of an entry hall, a stairway to the second floor, a living room, dining room, kitchen and pantry. There were four bedrooms and a bath on the second floor. Access to the house was by way of steps to a front porch off of which was the door to the entry hall. The property was acquired as a rental and was not altered in any way.

Prior to August 15, 1971, defendant entered into an oral agreement to rent the premises on a month-to-month basis to five university students, he to supply the house with a stove and refrigerator and the students to pay rent and utilities. The de-

fendant reserved no control over any part of the premises and although he intended to take care of major repairs, there was no specific agreement in this regard.

At the time of purchase, the defendant also owned property at 1310 Kentucky Street which was rented to students, one of whom when he saw the defendant delivering the stove and refrigerator to 1312 Kentucky, tried to get the defendant to install a better refrigerator at 1310 Kentucky. In the course of conversation, this student suggested that the defendant should fix the porch at 1310 Kentucky and also the steps at 1312 Kentucky. The trial court specifically found that the defendant never observed or knew that the steps at 1312 Kentucky were a problem nor did any of his tenants at that address complain about the steps prior to the accident.

Although five students had initially planned to reside at 1312 Kentucky, it developed that only four of them moved in on August 15, 1971. They used the front porch steps frequently and no one had trouble with them at any time prior to the accident.

On August 20, 1971, the plaintiff went to visit friends who lived in houses on either side of 1312 Kentucky. Finding no one home at either location, he decided to sit in his car in front of 1312 Kentucky to listen to music coming from the house. Shortly thereafter, someone at that address invited plaintiff to come in and listen, and while sitting on the porch, three of plaintiff's friends joined him. Neither the plaintiff nor any of his friends had trouble in walking up the steps to the porch and when they decided to leave, one of the friends preceded the plaintiff and negotiated the steps without difficulty. As plaintiff started down the steps, he slipped and fell into the yard where he stayed briefly until assisted next door by his friends. After he felt able, plaintiff returned to 1312 Kentucky where he observed that the top step to the porch had turned over. When the tenants at 1312 Kentucky reported the problem with the steps, the defendant caused them to be repaired.

From these facts, the court concluded:

"1. While on the premises at 1312 Kentucky, plaintiff was a mere licensee and has no claim against defendant for any injury plaintiff may have sustained when he slipped and fell on the porch steps because there is no evidence of wanton conduct on the part of defendant. [*Borders v. Roseberry*, 216 Kan. 486, 532 P. 2d 1366 (1975).]

"2. Plaintiff's contention that 1312 Kentucky was being operated as a multi-

family home because it was occupied by more than four persons is not supported by the evidence. Beyond this it is doubted that the classification of such properties as multi-family by city ordinance would result in bringing the same within one of the exceptions in *Borders,* supra.

"3. There is no evidence that defendant contracted to repair the steps in question or that being aware that the steps needed repairs, defendant failed to repair the same."

Plaintiff complains that the trial court erred in its conclusion that the plaintiff was a mere licensee and thus had no claim against defendant for his injuries because there was no evidence of wanton conduct on the part of the defendant. He argues that as a social guest he stood in the shoes of the tenants and therefore was an invitee, and if defendant would have been liable to any of his tenants, the defendant is liable to him.

It is admitted and the trial court determined that the plaintiff entered onto the premises at 1312 Kentucky at the invitation of "someone" at that address and remained on the porch for a short time to await his friends and to listen to music emanating from the inside, and for no other purpose. Clearly, he was a social guest on the premises, and in a legal sense, a mere licensee. [*Ralls v. Caliendo,* 198 Kan. 84, 422 P. 2d 862 (1967), *Weil v. Smith,* 205 Kan. 339, 469 P. 2d 428 (1970).]

The defendant acquired the premises on August 1, 1971, and his tenants moved in on August 15, 1971. The trial court found as fact that the defendant had not altered the structure in any way. Obviously, whatever defect existed on the date of the accident was in existence at the time the tenants took possession. It must be emphasized that here we are dealing with a claim against a landlord, a non-occupying defendant, by a guest of his tenants. In this situation, the status of the plaintiff as a "social guest or licensee" or "invitee" fades in significance. In the case of *Borders v. Roseberry,* supra, which was an action by a social guest of a tenant of a single-family dwelling for injuries caused by a fall on ice formed on the steps to the house, the supreme court reaffirmed the traditional rule that there is no liability on the part of the landlord for defective conditions existing at the time of the lease, either to the tenant or to others entering upon the premises, but then observed that the general rule of non-liability has been modified by a number of exceptions which have been created as a matter of social policy (p. 488). The court noted six exceptions and used the language of Restatement (Second), Torts, to set them

out. The language of the relevant exceptions provides that if a particular situation exists, the landlord is subject to liability to the lessee and others upon the land with the consent of the lessee or his sub-lessee for physical harm caused by that condition after the lessee has taken possession. (See exceptions 1, 4, 5 and 6 as set forth in *Borders v. Roseberry*, supra, pp. 488-493.)

It becomes apparent therefore that if the defendant as landlord or lessor was liable to his tenants for the injury sustained by the plaintiff, he would also be liable to the plaintiff as a social guest of his tenants for injuries sustained under the same conditions. However, whether tenant or social guest, the circumstances must be such as to bring the case within one or more of the exceptions noted in *Borders v. Roseberry*, supra. We do not deem it important here to determine whether there was wanton conduct on the part of the defendant as did the trial court, but rather whether one of the exceptions noted in the *Borders* case applies. If not, there is no liability.

The plaintiff argues that the trial court erred in finding no evidence that defendant contracted to repair the steps in question, or being aware that the steps needed repair, failed to repair them, and refers to exception 5 (where lessor contracts to repair) as set forth in *Borders v. Roseberry*, supra. He argues that the evidence established an oral contract to repair to be in existence at the time of plaintiff's injury. He points to defendant's testimony that it would be his responsibility to repair the stairs and if major problems arose, he would expect to take care of them. A tenant testified that under the oral lease with defendant, it was expected that defendant would make major repairs, including the steps. Defendant counters that under *Borders,* a specific contract to repair, supported by consideration, is required to hold a landlord liable, and that the general obligation of the defendant to take care of major repairs, including repair to the steps, is not such a contract, at least until the defendant is made aware of the need for repair.

Restatement (Second), Torts § 357, comment b.1 at 241-242 (1965), sheds some light on the meaning of *Borders* exception 5. It is there stated that reasons for the exception include:

"The lessor's contractual undertaking, for consideration, to repair the premises or to keep them in repair. The rule stated in this Section therefore has no application where the lessor does not contract to repair, but merely reserves the

privilege to enter and make repairs if he sees fit to do so. Likewise the rule has no application where there is no contractual obligation, but merely a gratuitous promise to repair, made after the lessee has entered into possession. The contract need not, however, be a covenant or other term of the lease, and it is sufficient if it is made by the lessor, as such, after possession is transferred."

None of the Kansas cases cited in *Borders* as having followed this exception involved a situation where the contract to repair was claimed to arise simply from the landlord's general obligation to make repairs. Three of the cases involved specific agreements by the landlord to repair after being notified by a tenant of the need. A fourth, *Transport Insurance Co. v. Huston,* 207 Kan. 759, 486 P. 2d 1344 (1971), construed a term in the lease absolving the lessor to repair the item in question. *Vieyra v. Engineering Investment Co., Inc.,* 205 Kan. 775, 473 P. 2d 44 (1970), held that if the lease does not require the lessor to inspect the premises, the lessor is not liable until the lessee gives notice of the need to repair. Also mentioned is *Steele v. Latimer,* 214 Kan. 329, 521 P. 2d 304 (1974), which incorporated as a matter of law a city's minimum housing standards into a lease of urban residential property. Thus, a contract arises under which a landlord must keep the premises in compliance with the standards. Plaintiff here raises no issue as to the housing standards in Lawrence or as to whether the state of repair of the steps in question would have been in compliance with those standards.

We conclude from all of the foregoing that no "contract to repair" within the meaning of *Borders* exception 5 existed.

We take note at this point of exception 1 (undisclosed dangerous conditions known to lessor) as set forth in the *Borders* case and the fact that one of the tenants at 1310 Kentucky suggested that the defendant should fix the steps at 1312 Kentucky. This court must also take note of the fact found by the trial court that the defendant never observed or knew that the steps in question were a problem nor did anyone at 1312 Kentucky complain about them prior to the accident. This specific finding of the trial court is supported by the testimony of the defendant and one of his tenants, as well as evidence of the physical act of use made of the steps by the tenants in entering and leaving the premises without noticing any defect, and the use made by the defendant while installing the stove and refrigerator in the house. This finding of the trial court, supported by competent evidence, will not be

disturbed on appeal. [*Fox v. Wilson*, 211 Kan. 563, 507 P. 2d 252 (1973).]

Plaintiff argues that the trial court erred in its finding that the property was not a multi-family residence with common passages reserved to the defendant's control and states that he is entitled to damages under *Borders* exception 4 (parts of land retained in lessor's control which lessee is entitled to use). He cites the case of *Trimble v. Spears*, 182 Kan. 406, 320 P. 2d 1029 (1958), in support of his position. The *Trimble* case involved an action for damages against the owner of a business building, a portion of which was rented to a co-defendant occupying a portion of the building as a dry cleaning establishment, and another portion of which was occupied by a barber shop. It was admitted that certain public portions of the building other than the rented rooms were reserved by and under control of the landlord. We find no similarity with the case at bar where one of the tenants occupying the premises at the time of the accident testified that no part of the house or any outlying part thereof had been reserved to the defendant, and defendant had no responsibility for day-to-day maintenance of the house or yard. He also testified that they just rented the house "lock, stock and barrel." We take note of the floor plan of the dwelling and that, although each tenant had his own bedroom, all of the occupants shared the kitchen and the bathroom. It is also noted that the rental arrangements were for a sum to be paid by the occupants collectively and not for an amount to be paid by each of them. The trial court found the dwelling had been a single-family residence and was rented without alteration. There is no evidence that defendant retained control of any portion of the premises as contemplated by *Borders* exception 4.

Finally, the plaintiff urges upon this court his contention of error in that the trial court refused to require answers to certain interrogatories propounded by the plaintiff. By this means the plaintiff attempted to discover whether the defendant had ever been sued over a similar incident or any incident arising out of any property owned by the defendant; whether the defendant had ever been informed or notified by any city official that any of his properties did not comply with the housing code; and as to what system, if any, was used by the defendant to inspect his properties and to keep them in proper repair. It is difficult to perceive

how these interrogatories may have been relevant to the subject matter of this cause or how answers most favorable to the plaintiff might have been used to assist in trial preparation. It is also difficult to understand why plaintiff did not pursue that line of questioning at the trial if he truly believed that relevant and material information might have been forthcoming. K.S.A. 60-226 (*b*) is patterned after Rule 26, Federal Rules of Civil Procedure. In relation to that rule, it has been said that "relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." (8 Wright & Miller, Federal Practice and Procedure, Civil § 2008, p. 45.) Balanced against this liberal standard must be the broad discretion vested in the trial court as to the direction and use of discovery. We find no abuse of that discretion in this case. [See *Tilley v. International Harvester Co.*, 208 Kan. 75, 490 P. 2d 392, syl. 2 and 3 (1971); *Commercial Union Ins. Co. v. City of Wichita*, 217 Kan. 44, 536 P. 2d 54, syl. 8 (1975).]

Judgment affirmed.