(726 P.2d 796)
No. 58,852

M. JACKSON and J. JACKSON, Minors, By CHARLES JACKSON, Their Natural Father and Next Friend, and J. FRAZIER, Minor, By CHARLES JACKSON, Next Friend, and S. KIRKHAM, *Appellants*, v. JIM WOOD, Individually, and d/b/a ELFIN ACRES TRAILER COURT, Ogden, Kansas, *Appellee*.

Petition for review denied December 18, 1986.

Opinion filed October 16, 1986.

*Jerry R. Palmer* and *Martha M. Snyder*, of Palmer, Marquardt & Snyder, P.A., of Topeka, for appellants.

*John F. Stites* and *Bren Abbott*, of Stites, Hill, Wilson & Brownback, of Manhattan, for appellee.

Before BRAZIL, P.J., TERRY L. BULLOCK, District Judge, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BRAZIL, J.: The children of Birdia Sims Jackson (deceased) appeal the order of the Riley County District Court granting summary judgment for the defendant, James Wood, d/b/a Elfin Acres Trailer Court, in a wrongful death action.

On or about January 25, 1978, Birdia Sims Jackson and John L. Hollingsworth were overcome by carbon monoxide gas leaking from a heater vent in a duplex in Ogden, Kansas, owned by the defendant and rented to Hollingsworth. The rental agreement for the duplex was signed by Pam Tunison, daughter of the defendant who was acting as an authorized agent for the de-

fendant, and John Hollingsworth. The agreement, dated August 26, 1977, lists John Hollingsworth and Birdia Hollingsworth as tenants, but was signed only by John.

On April 19, 1984, the four children of Birdia Sims Jackson, by and through their next friend, Charles Jackson, filed this action seeking damages for the death of their mother and alleging that the defendant breached the duty of care owed to the tenants: 1) in providing with the rented premises a heating device that was hazardous to occupants; 2) in failing to inspect and repair the heater; and 3) in failing to maintain all heating and ventilating appliances in good and safe working order and condition in violation of K.S.A. 58-2553(a). Although the original petition alleged Birdia was a social guest at the time of her death, plaintiffs' subsequent pleadings include an allegation that she was a tenant.

The defendant filed a motion for summary judgment alleging that at the time of her death Birdia was a guest of John Hollingsworth rather than a tenant. The trial court agreed and further concluded that, since she was not a tenant, she was not entitled to the standard of care due to tenants under the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2540 *et seq.* Instead the court concluded that, at best, she was a licensee, that defendant owed a duty only to refrain from wilfully or wantonly injuring her, and that "as a matter of law . . . the evidence does not show wilful and wanton negligence on the part of the defendant."

The plaintiffs raise four issues on appeal, one of them being: Whether a landlord owes the same duty of reasonable care to a social guest of a tenant as is owed to the tenant.

"Under the law in this jurisdiction a social guest has the status of a licensee and his host owes him only the duty to refrain from wilfully, intentionally, or recklessly injuring him." *Gerchberg v. Loney,* 223 Kan. 446, 448, 576 P.2d 593 (1978) (citing *Ralls v. Caliendo,* 198 Kan. 84, Syl. ¶ 1, 422 P.2d 862 [1967]); *Duckers v. Lynch,* 204 Kan. 649, 465 P.2d 945 (1970). Likewise, it would appear that in a landlord-tenant relationship, a social guest of a tenant is also a mere licensee. *Hamilton v. Ling,* 1 Kan. App. 2d 22, Syl. ¶ 1, 561 P.2d 880, *rev. denied* 225 Kan. 844 (1977).

However, in this particular relationship "dealing with a claim against a landlord, a non-occupying defendant, by a guest of his

tenants . . . , the status of the plaintiff as a 'social guest or licensee' or 'invitee' fades in significance." *Hamilton v. Ling*, 1 Kan. App. 2d at 24. The *Hamilton* court reached this conclusion based upon *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366 (1975).

As noted by the court in *Borders*:

"Traditionally the law in this country has placed upon the lessee as the person in possession of the land the burden of maintaining the premises in a reasonably safe condition to protect persons who come upon the land. It is the tenant as possessor who, at least initially, has the burden of maintaining the premises in good repair. [Citations omitted.] The relationship of landlord and tenant is not in itself sufficient to make the landlord liable for the tortious acts of the tenant. [Citations omitted.] When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the responsibilities of one in possession, both to those who enter onto the land and to those outside of its boundaries. . . . There is therefore, as a general rule, no liability upon the landlord, either to the tenant or to others entering the land, for defective conditions existing at the time of the lease." 216 Kan. at 488.

However, in *Borders* the court also noted that the general rule of nonliability has been modified by a number of exceptions which have been created as a matter of social policy. One of those exceptions, "[w]here lessor contracts to repair," 216 Kan. at 491, is applicable to this appeal. From *Borders* it appears that when the lessor contracts to repair, the rule stated in § 357 of the Restatement (Second) of Torts (1965) applies and the landlord owes a duty of reasonable care not only to his tenant, but also to others on the premises with the consent of the tenant.

" '§ 357. Where Lessor Contracts to Repair

" 'A *lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair* existing before or arising after the lessee has taken possession if

" '(a) the lessor, as such, has contracted by a convenant in the lease *or otherwise* to keep the land in repair, and

" '(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

" '(c) the lessor fails to exercise reasonable care to perform his contract.' " (Emphasis added.) 216 Kan. at 492 (quoting Restatement [Second] of Torts § 357).

Therefore, if the exception is applicable, whether Birdia was an invitee or a mere licensee is irrelevant. Under the rule of liability

created by the exception, the landlord owes a duty of reasonable care to perform his contract to repair to both invitees and licensees. See *Hamilton v. Ling*, 1 Kan. App. 2d at 25.

The question then becomes whether there was a contract to repair which would bring the *Borders* exception into play. The plaintiffs argue that the defendant owed a duty of reasonable care to Birdia because he contracted to repair in the lease and failed to carry out his duty to repair. The defendant argues that this theory was not presented to the trial court and cannot be considered by this court on appeal. " 'A litigant may not for the first time on appeal change the theory of his case from that on which it was presented to the trial court, nor may he present matters or issues which he did not bring to the attention of that court.' [Citations omitted.]" *Goff v. American Savings Association*, 1 Kan. App. 2d 75, 78, 561 P.2d 897 (1977).

In this case, while the duty to repair pursuant to the *written terms of the lease* was not presented to the trial court, the plaintiffs did allege in their response to the motion for summary judgment that the landlord breached his duty of care in failing to maintain all heating and ventilating appliances in good and safe working order and condition in violation of K.S.A. 58-2553(a). The trial court found that Birdia Sims, at the time of her death, was not a tenant and that "[a]s a result the standard of care due from the defendant to his tenants by virtue of the Kansas Residential Landlord and Tenant Act [K.S.A. 58-2540 *et seq.*] did not apply to Birdia Sims." Thus we conclude, the applicability of K.S.A. 58-2553(a) and its interplay with the lease has been sufficiently raised below to warrant our consideration here.

K.S.A. 58-2553(a)(3) provides:

"(a) Except when prevented by an act of God, the failure of public utility services or other conditions beyond the landlord's control, the landlord shall:

. . . .

"(3) maintain in good and safe working order and condition all . . . heating, ventilating . . . appliances . . . supplied or required to be supplied by such landlord."

This court has previously observed that K.S.A. 58-2553 imposes duties on the landlord which he cannot delegate to the tenant in the lease. *State v. Mwaura*, 4 Kan. App. 2d 738, 741, 610 P.2d 662, *rev. denied* 228 Kan. 807 (1980). However, no Kansas cases have considered whether the statute creates a contract to repair which would make the *Borders* exception

(Restatement [Second] of Torts § 357) applicable when a land-lord fails to maintain heating or ventilating appliances in good and safe working order. .

In *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304 (1974), a tenant sued the landlord to recover rent paid, to recover dam-ages, and to enjoin violation of the Wichita Housing Code. The court, adopting the idea of an implied warranty of habitability, concluded:

"The provisions of a municipal housing code prescribing minimum housing standards are deemed by implication to become a part of a lease of urban residential property, giving rise to an implied warranty on the part of the lessor that the premises are habitable and safe for human occupancy in compliance with the pertinent code provisions and will remain so for the duration of the tenancy." 214 Kan. 329, Syl. ¶ 8.

The implied warranty of habitability concept, at least so far as it is embodied in municipal housing codes and ordinances, adopted in *Steele* was codified in K.S.A. 58-2553(a)(1). See Brand, *The New Residential Landlord and Tenant Act*, 44 J.K.B.A. 227, 231 (1975). In *Clark v. Walker*, 225 Kan. 359, 363, 590 P.2d 1043 (1979), the court considered the Residential Landlord and Tenant Act as a whole and the legislative purpose of enacting it.

"The legislative history and background for the act is contained in the Report of the Special Committee on Consumer Protection to the 1974 legislature pertain-ing to proposal No. 17 governing landlord-tenant relations. In its report, the special committee points out that the subject of study was 'the need for additional legislation governing landlord-tenant relations.' In general, *existing Kansas statutes in this area related to the duration and termination of various tenancies and forcible detainer actions.* At the time of the report, *there was little or no statutory law in Kansas governing the more substantive aspects of landlord-tenant relationships.* The report noted that the Uniform Residential Landlord-Tenant Act was approved by the National Conference of Commissioners on Uniform State Laws at its August 1972, annual meeting. The committee then makes the following conclusions and recommendations:

" 'Upon analysis of the information before the Committee, *it became apparent that the antiquated common law concepts and absence of statutory law creates problems and works to the detriment of both landlords and tenants who may very well be operating on different premises.* It is the opinion of the Committee that *there is a need to statutorily state the various obligations and other elements of tenancy so as to adequately express the modern day concepts of landlord-tenant relations.* It should not be made the responsibility of the courts to develop these concepts. Therefore, the Committee recommends that the 1974 legislature enact a comprehensive landlord-tenant code which would establish a single standard of reference for both landlords and tenants.' (17-3.)" (Emphasis added.) 225 Kan. at 363.

While *Steele* and K.S.A. 58-2553(a)(1) define minimum standards for rental housing which are read into and become part of the lease, we have found no cases in which our courts have specifically considered whether K.S.A. 58-2553(a)(3) should be read into and become a part of the lease; or whether it codifies Restatement (Second) of Torts § 357 principles as approved in *Borders*.

We note that *Borders* was decided in March 1975 prior to the enactment of the Kansas Residential Landlord and Tenant Act on July 1, 1975. Likewise, the *Hamilton v. Ling* case decided in February 1977 involved injuries that occurred in 1971. Consequently, the Act was not applicable in either case.

However, the court in *Hamilton v. Ling,* when considering *Steele v. Latimer,* which incorporated the city's minimum housing standards into a lease of urban residential property, stated: "Thus, a contract arises under which a landlord must keep the premises in compliance with the standards." 1 Kan. App. 2d at 26. The court went on to conclude, since the plaintiff in *Hamilton v. Ling* had not raised the issue as to housing standards, "*that no 'contract to repair' within the meaning of Borders exception 5 [Restatement (Second) of Torts § 357] existed.*" (Emphasis added.) 1 Kan. App. 2d at 26.

In these two cases, then, our courts have concluded that municipal housing ordinances relating to housing standards must be incorporated into residential leases. Further, *Hamilton v. Ling* would appear to hold that such a contract created by law would constitute a contract to repair within the meaning of the *Borders* exception. Finally, *State v. Mwaura* holds that K.S.A. 58-2553(a)(1) - (3) and K.S.A. 58-2547 "impose absolute and nondelegable duties" on landlords. 4 Kan. App. 2d at 741. We are thus persuaded that the duties imposed upon landlords under the Kansas Residential Landlord and Tenant Act must be incorporated into residential leases and that K.S.A. 58-2553(a)(3) constitutes a contract to repair within the meaning of the *Borders* exception.

Accordingly we hold that, if the landlord knew or reasonably should have known of a defective condition in the heating stove or ventilation, then the landlord owed a duty of reasonable care to repair so as to maintain the heating stove and ventilation in

good and safe working order and condition. We further hold that duty is owed not only to the tenant but to others on the premises with the consent of the tenant. Whether Birdia was a tenant or a guest of the tenant, in our view, is irrelevant and this case must be reversed and remanded for trial.

Based on our ruling here, the other issues raised by plaintiffs on appeal need not be addressed. Reversed and remanded for trial.