(203 P.3d 68)
No. 99,529

SIMON J. O'NEILL, *Appellant,* v. JAMES R. DUNHAM and
EVELYN L. DUNHAM, *Appellees.*

Opinion filed March 20, 2009.

*William J. Pauzauskie*, of Pauzauskie Law Office, of Topeka, for appellant.

*J. Steven Pigg* and *Vincent M. Cox*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees.

Before HILL, P.J., MALONE and CAPLINGER, JJ.

HILL, J.: Through enactment of the statute of repose, the Kansas Legislature has granted immunity to defendants for claims made 10 years after a defendant's acts or omissions give rise to a cause of action. Here, the defendants bought an apartment building in Manhattan in 1990. The plaintiff fell down a set of stairs in one of the apartments and broke his leg in 2004; he claims a handrail could have prevented his fall and has sued the owners for personal injuries because they failed to install a handrail. No handrail was installed on those stairs in the apartment when they purchased the place, and the defendants have not installed one since their purchase. Because 14 years have elapsed since they purchased the building and failed to install a handrail, the statute of repose bars the plaintiff's negligence claim for personal injury arising from that failure. The negligence per se claims of the plaintiff arising from any alleged breach of the Code of Ordinances for the City of Manhattan have no merit as the code does not grant a private cause of action. However, because the Kansas Residential Landlord and Tenant Act establishes a duty for every residential landlord to comply with the requirements of applicable building codes materially affecting safety, we remand the case for the district court to determine if the landlords had knowledge, actual or imputed, of the requirement to install a handrail and if the plaintiff was on the premises with the consent of the tenants. We must affirm the district court's grant of summary judgment in part and reverse and remand with directions.

*We give a brief background of the case.*

James and Evelyn Dunham, the defendants, bought an apartment building at 718 Kearney in Manhattan in December 1990. The building has two apartments: apartment 1 is upstairs and apartment 2 is downstairs. Apartment 2 has a 5 x 3½ foot landing inside the apartment, not in a common area, with five steps descending from the landing into the apartment. The parties agree that apartment 2 had no handrail when the Dunhams bought the building and that they have not installed one.

Simon J. O'Neill, the plaintiff, attended a party in apartment 2 on the night of July 23, 2004. He was neither a tenant nor was he invited to the party. In his deposition, the plaintiff testified that while he was trying to get another beer, someone bumped him while he was on the landing and he then fell down the stairs and suffered a broken leg.

Seeking damages for his personal injuries, O'Neill sued the Dunhams, making several contentions in his petition, all centering on the lack of a handrail. He asserted the defendants had failed to exercise reasonable care by keeping the property without handrails. O'Neill also contended the defendants failed to exercise ordinary care and maintain the property in a safe condition by failing to install handrails. He also alleged the defendants negligently failed to install handrails on the staircase in direct violation of section 306.1 of the International Property Maintenance Code of 2003 as adopted in section 8-176 of the Code of Ordinances for the City of Manhattan, Kansas. That code calls for a handrail on at least one side for any set of stairs that has more than four risers. He sought damages for past and future medical expenses, lost wages, pain and suffering, and disabilities.

The district court closed the case by granting summary judgment to the defendants based on the statute of repose. The defendants argued the plaintiff's claims were barred by K.S.A. 60-513(b) and the plaintiff did not have a negligence per se claim because the Manhattan Code does not provide a private right of action. Without considering the merits of any of the plaintiff's negligence per se arguments, the district court granted the defendants' motion for summary judgment.

Specifically, the court found that if the defendants had been negligent, they were negligent in failing to install a handrail, and such negligence would have occurred 13½ years before plaintiff's fall and injury. The district court likened the case to *Klose v. Wood Valley Racquet Club, Inc.,* 267 Kan. 164, 975 P.2d 1218 (1999), and found that the plaintiff's claims were barred by the 10-year statute of repose in K.S.A. 60-513(b). O'Neill appeals that judgment.

Where there is no factual dispute, as in this case, appellate review of an order regarding summary judgment is de novo. *Cooke v. Gillespie,* 285 Kan. 748, 754, 176 P.3d 144 (2008). We will therefore look at the matter without limitation.

*We make some observations on the statute of repose.*

It is seldom helpful to consider a statute out of context, and this principle applies to the statute of repose because the legislature has intended the rule to be read in conjunction with the statute of limitations. The two statutes, when read together, express the public policy of Kansas concerning when claims for personal injury can be pursued in court. Under K.S.A. 60-513(a), an "action for injury to the rights of another, not arising on contract" must be brought within 2 years. Such actions are deemed to have accrued when "the act giving rise to the cause of action first causes substantial injury." K.S.A. 60-513(b). But K.S.A. 60-513(b) provides that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." These two laws set out clear limits on claims: the statute of limitations eliminates stale claims, and the statute of repose provides immunity for claims.

Our Supreme Court has addressed these distinctions.

" 'A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive. [Citations omitted.]' " *See v. Hartley,* 257 Kan. 813, 818, 896 P.2d 1049 (1995).

The rule is clear. The statute of repose operates as a general grant of immunity against claims arising more than 10 years after the defendant's actions and abolishes a cause of action even if it has not yet accrued. *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 663, 831 P.2d 958 (1992); *Four Seasons Apts. v. AAA Glass Service, Inc.*, 37 Kan. App. 2d 248, 251, 152 P.3d 101 (2007).

*We apply the rule of repose to the facts of this case.*

The defendants concede that apartment 2 had no handrail from 1990 until July 2004, the date of plaintiff's injury. They also admitted in their depositions it was their responsibility, not the tenant's, to install and maintain a handrail on the stairs of apartment 2 according to the language in the rental agreement as well as the Code of Ordinances of the City of Manhattan, Kansas. The code requires every flight of stairs with more than four risers to have a handrail on one side of the stairs. Manhattan Code, secs. 8-176 to 8-178; International Property Maintenance Code of 2003, secs. 106, 306.

Fundamentally, in order to determine if the statute of repose is applicable, a court must decide when an act that gives rise to a cause of action happens. The logic used by the district court here is straightforward. The first time the Dunhams could have installed a handrail was the day after they bought the building. They failed to act, and if that failure is considered to be negligence, then it happened 14 years before the plaintiff fell down the stairs. The court used *Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 975 P.2d 1218 (1999), as its guide. In *Klose,* a child was injured during a tennis tournament when he ran into a concrete wall next to his court at the defendant's racquet club. The plaintiff brought personal injury claims against the club, arguing the wall was placed too closely to the court under United States Tennis Association rules. Our Supreme Court held the claims were barred by the statute of repose in K.S.A. 60-513(b) because more than 10 years had lapsed between the wall's construction in 1974 and plaintiff's 1994 injury. 267 Kan. 165, 172-74.

In relying on *Klose,* the court said:

"This case is more similar to *Klose* than *Dobson.* In *Klose,* the plaintiff collided with a concrete wall, as in this case Plaintiff fell on stairs. In *Klose,* the alleged

negligence was not that the defendants owned a structure with a concrete wall, but that they placed the tennis court too near that wall, as in this case the alleged negligence is not that Defendants' apartment contained these stairs, but that they failed to install a handrail for them. As in *Klose,* the act giving rise to the cause of action occurred well outside the limit set by the statute of repose, and the cause of action is, therefore, barred."

The plaintiff urges us to reject the trial court's analogy to *Klose* for the first time on appeal, contending instead the analysis in *Dunn v. U.S.D. 367,* 30 Kan. App. 2d 215, 40 P.3d 315 (2002), is more appropriate. In *Dunn,* two schoolboys were injured when a glass plate in a school's hallway door broke, cutting them both severely. They sued the school district, alleging various claims of negligence, failure to replace the plate glass with safety glass, and failure to warn about the plate glass. The school district raised the affirmative defense of the statute of repose, arguing that the students' claims were barred because more than 10 years had passed between the door's installation in the late 1960's and the 1995 injuries.

Actually *Dunn* offers the plaintiff scant help. The *Dunn* panel decided the controversy based upon the school district's "breaches of duties other than failure to replace the plate glass with safety glass" and *assumed without deciding* that the school district could not "be held liable for any design or planning defect that led to the installation of the plate glass." *Dunn,* 30 Kan. App. 2d at 217-18. That language does not support the plaintiff.

Furthermore, other panels of this court have followed the *Klose* court's analysis and defined the defendant's wrongful act as the date of negligent installation, construction, or demolition. See *Kerns v. G.A.C., Inc.,* 255 Kan. 264, 875 P.2d 949 (1994) (holding that plaintiff's negligence claims were barred by statute of repose because more than 10 years lapsed between installation of fence in 1968-1969 and plaintiff's 1990 injury); *Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 832 P.2d 345 (1992) (finding that plaintiff's claims against builder for negligence and insurer for wrongful refusal to pay on loss claim were barred by statute of repose because more than 10 years elapsed between construction of home in 1972 and plaintiff's claim in 1990); *Admire Bank & Trust v. City of*

*Emporia*, 250 Kan. 688, 690-700, 820 P.2d 578 (1992) (holding that Admire Bank's property damage claim against City of Emporia was barred by statute of repose because City's wrongful act of negligent demolition of party wall in 1970 occurred more than 10 years before bank's purchase of property in 1990); *Four Seasons*, 37 Kan. App. 2d at 250-51 (holding that defendant's wrongful act under K.S.A. 60-513[b] occurred during the defendant's 1993 installation of new doors on plaintiff's apartment building; therefore, plaintiff was deprived of remedy by statute of repose before it discovered that doors did not adhere to building code requirements in 2005); *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 832 P.2d 345 (1992) (finding that plaintiff's claims against builder for negligence and insurer for wrongful refusal to pay on loss claim were barred by statute of repose because more than 10 years elapsed between construction of home in 1972 and plaintiff's claim in 1990).

Here, it is clear that the plaintiff's claims are barred by the statute of repose in K.S.A. 60-513(b). The record does not provide evidence of when apartment 2 was constructed, but the defendants purchased the apartment in 1990. From 1990 to the date of plaintiff's injury in 2004, apartment 2 remained without a handrail. We conclude 14 years passed between the defendant's wrongful act of failing to install the required handrail and plaintiff's 2004 injury. We hold his claim is barred by law.

The plaintiff urges this court to find defense counsel in violation of Kansas Rule of Professional Conduct 3.3(a)(2) (2008 Kan. Ct. R. Annot. 531) for failing to cite *Dunn* at the trial court level, especially in light of the fact that counsel's firm represented the school district in *Dunn*. While it is true that Rule 3.3(a)(2) states an advocate has a duty to disclose directly adverse authority from the controlling jurisdiction, *Dunn*, as we have previously pointed out, does not control this issue. We make no finding of any professional misconduct by defense counsel not mentioning the case.

*We examine the negligence per se claims.*

We must point out that whether a private cause of action for negligence per se exists under a statute is a question of law over which this court exercises unlimited review. *Nora H. Ringler Rev-*

*ocable Family Trust v. Meyer Land and Cattle Co.*, 25 Kan. App. 2d 122, 126, 958 P.2d 1162 (1998). We will therefore address the issue.

Under Kansas law, a plaintiff has a claim for negligence per se if he or she can demonstrate the following: " '(1) a violation of a statute, ordinance, or regulation, and (2) the violation must be the cause of the damages resulting therefrom.' " *Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004). In addition, a plaintiff must also prove " 'that an individual right of action for injury arising out of the violation was intended by the legislature. [Citation omitted.]' " 278 Kan. at 194. The determination of whether a private cause of action exists under a statute is a question of law analyzed under a two-part test. First, "the party must show that the statute was designed to protect a specific group of people rather than to protect the general public. Second, the court must review legislative history in order to determine whether a private right of action was intended. [Citations omitted.]" 278 Kan. at 194; *Ringler*, 25 Kan. App. 2d at 126. If the plaintiff can prove that a statute, ordinance, or regulation was enacted to protect a specific group of people, he or she must prove that he or she is a member of the protected class. See *Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 127, 804 P.2d 978 (1991).

Article VIII, section 8-176 of the Manhattan Code adopts the International Property Maintenance Code "for the purpose of establishing standards for the protection of the public health, safety and welfare, in all existing structures within the corporate city limits of the City of Manhattan." Most relevant to plaintiff's allegations of negligence is section 306.1, which provides: "Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair."

The intent of both codes is to ensure public health, safety, and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises. Under section 1-7 of the Manhattan Code, whenever the code or city ordinances prescribe that "an act is prohibited or is made or declared to be unlawful or an offense or a misdemeanor . . . the violation of any such provision of this Code or any such ordinance shall be punished

by a fine of not exceeding $500.00 or by imprisonment for a period not exceeding six months." Section 106.4 of the International Code contains similar language regarding punishment of violations, providing that "[a]ny person who shall violate a provision of this code . . . shall be prosecuted within the limits provided by state or local laws." In addition to criminal penalties, section 106.5 of the International Code permits a legal officer to institute an "appropriate action to restrain, correct or abate a violation, or to prevent illegal occupancy of a building, structure or premises, or to stop an illegal act, conduct, business or utilization of the building, structure, or premises." Importantly, both the International Code and the Manhattan Code are silent about any civil remedies.

With this analysis of the relevant provisions of both codes, it becomes clear that plaintiff has no private negligence per se action. The purpose of their enactment is to protect the public health, safety, and welfare of the residents of Manhattan. This leads to the conclusion that the ordinances are designed to protect the public and do not create a specific duty to any group of individuals. See *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.,* 249 Kan. 348, 819 P.2d 587 (1991); *Schlobohm,* 248 Kan. at 126-27; *Estate of Pemberton v. John's Sports Center, Inc.,* 35 Kan. App. 2d 809, 818, 135 P.3d 174 (2006). We hold there was no negligence per se claim created by the city code or the International Code.

*The Kansas Residential Landlord and Tenant Act presents a problem for summary judgment.*

In his response to the defendant's motion for summary judgment and in the pretrial order, the plaintiff maintained that the Kansas Residential Landlord and Tenant Act, by requiring the defendants to comply with all building codes, obliged the defendants to install a handrail. The plaintiff suggests that since the building code was adopted by Manhattan in 1998, the defendants' failure to comply with the code must have occurred sometime after that but in any event well within 10 years of the accident in 2004. Therefore, the plaintiff reasons, the statute of repose has no effect on this cause of action.

In response, the defendants contend the plaintiff's petition made no allegations about the Kansas Residential Landlord and Tenant Act and the matter is not properly before us. Second, in their view, the Act provides no relief for nontenants or uninvited strangers and since the plaintiff, clearly not a tenant, was merely an uninvited person at a party, the Kansas Residential Landlord and Tenant Act offers him no cause of action against the defendants. Because the plaintiff brought up this issue in response to the summary judgment motion and in the pretrial order, we hold that the matter is properly before us and consider the argument.

In order to sort this out, it is beneficial to review the law that gave rise to the plaintiff's argument. In 1975, our Supreme Court in *Borders v. Roseberry*, 216 Kan 486, 488, 532 P.2d 1366 (1975), instructed on the law of premises liability. Basically, the tenant was responsible to keep the leasehold reasonably safe:

"Traditionally the law in this country has placed upon the lessee as the person in possession of the land the burden of maintaining the premises in a reasonably safe condition to protect persons who come upon the land. It is the tenant as possessor who, at least initially, has the burden of maintaining the premises in good repair. [Citations omitted.] . . . When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the responsibilities of one in possession, both to those who enter onto the land and to those outside of its boundaries." 216 Kan. at 488.

With that background, the *Borders* court acknowledged that rules change with the times and recognized six exceptions to the common-law rule of tenant liability and landlord nonliability arising from a defective condition existing at the time of the lease. They are:

1. Undisclosed dangerous conditions known to lessor and unknown to lessee.
2. Conditions dangerous to persons outside of the premises.
3. Premises leased for admission of the public.
4. Parts of land retained in lessor's control which lessee is entitled to use.
5. Where lessor contracts to repair.

6. Negligence by lessor in making repairs. 216 Kan. at 488-93.

Exception five recognized by the *Borders* court, where the landlord agrees in the lease to make repairs, served as the basis for a panel of our court to conclude the three duties of a landlord, found in the Kansas Residential Landlord Tenant Act, must be incorporated into residential leases in Kansas. See *Jackson v. Wood,* 11 Kan. App. 2d 478, 483, 726 P.2d 796 (1986). In *Jackson,* the district court granted summary judgment to a landlord after finding he had no duty to a social guest of one of his tenants. The guest had died from inhalation of carbon monoxide emitted by a poorly maintained heater in one of the landlord's rental units. The heirs appealed the district court's grant of summary judgment, and this court reversed and remanded. 11 Kan. App. 2d 478.

The *Jackson* court ruled the Kansas Residential Landlord and Tenant Act in K.S.A. 58-2553(a) (1), (2), and (3) imposes three duties upon all residential landlords in Kansas. Those duties are:

1. Comply with the requirements of applicable building and housing codes materially affecting health and safety.
2. Exercise reasonable care in maintenance of the common areas.
3. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air-conditioning appliances including elevators supplied or required to be supplied by such landlord. See 11 Kan. App. 2d at 481.

These three duties have been described as "duties which cannot be delegated to a tenant" in *State v. Mwaura,* 4 Kan. App. 2d 738, 741, 610 P.2d 662 (1980).

In the *Jackson* panel's view, because the landlord had the duty under K.S.A. 58-2553(a)(3) to maintain the heater in his apartment in good and safe working order, it was irrelevant that the woman who died was a guest, but the panel by remaining silent did not extend the duty to trespassers. The court was very specific about the holding when it reversed the summary judgment and remanded the case:

"Accordingly we hold that *if the landlord knew or reasonably should have known* of a defective condition in the heating stove or ventilation, then the landlord owed a duty of reasonable care to repair so as to maintain the heating stove and ventilation in good and safe working order and condition. We further hold that duty is owed not only to the tenant but to others *on the premises with the consent of the tenant.*" (Emphasis added.) *Jackson,* 11 Kan. App. 2d at 483-84.

In an action for nonpayment of rent and possession of the premises, not a tort claim, a panel of this court dealt with building code violations in *Joe v. Spangler,* 6 Kan. App. 2d 630, 631 P.2d 1243 (1981). In *Spangler,* a housing inspector sent notice to the landlords of violations of the Kansas City, Kansas, Housing Code for exposed wiring, improper ventilation of the bathroom, and uncovered electrical outlets. The tenants, who were the defendants in the case, made a counterclaim for damages arising from the landlords' breach of duties arising from K.S.A. 58-2553(a)(1), (2), and (3). The trial court found that the landlords had violated the Kansas City code but not the Kansas Residential Landlord and Tenant Act. This court reversed saying:

"The evidence showed and the trial court found that there were 'defects in and on the premises that constituted violations of the building and housing code of the City of Kansas City, Kansas.' This finding would compel a conclusion that the landlord breached his duty under the statute unless the violated provisions did not materially affect health and safety.

". . . Therefore, under these circumstances, we must conclude as a matter of law that the conditions found to exist on plaintiff's property materially affected the health and safety of the tenants and violated the landlord's duty under K.S.A. 58-2553(a)(1)." *Spangler,* 6 Kan. App. 2d at 632.

When *Jackson* and *Spangler* are read together, it is clear that both courts recognized that it was important to determine whether a landlord knew or should have known of a violation of the applicable building code. In *Jackson,* the panel remanded the case to the district court to make such a determination. In *Spangler,* the trial court had already found as true the facts that the building inspector had sent notice to the landlord who therefore had knowledge of the violation of the building codes. We think this comports with traditional views of fairness in cases arising from premises liability.

These principles, when applied to this case, lead us to conclude that we do not have enough information to affirm summary judgment on this point. Although not necessarily controlling here, the facts reveal that the Dunhams, in their lease with the three young men who rented apartment 2, agreed to make all necessary repairs, alterations, and improvements to the dwelling unit with reasonable promptness at the landlord's expense. The ruling in *Jackson* impels us to incorporate into this lease the three duties of a landlord found in K.S.A. 58-2553(a)(1), (2), and (3) and apply those duties to the Dunhams. In other words those three duties were owed by the Dunhams to the tenants and to all on the premises who were there with the consent of the tenants.

We hold that K.S.A. 58-2553(a)(1) requires residential landlords to comply with the requirements of applicable building and housing codes *materially* affecting health and safety. This means the statute of repose does not negate any claim arising from a violation of one of the duties imposed by the Kansas Residential Landlord Tenant Act in this case since only 6 or fewer years had passed from the adoption of the building code and O'Neill's fall.

Therefore, we must remand this case for the district court to find the facts. First, the court must determine if the landlords, the Dunhams, knew or had reason to know of a violation of the applicable building and housing codes that materially affected health and safety. Second, the court must determine whether the lack of a handrail materially affected the safety of all in the apartment who were there with the consent of the tenants. And, finally, the court must determine if O'Neill was present on the premises with the consent of the tenants of apartment 2. If the answer is yes to all three questions, then the Dunhams owed O'Neill a duty of care and are liable. If the answer to any is no, then there can be no liability under this theory.

Since we are remanding this case we will not review the plaintiff's claim of error that the district court failed to grant his motion for reconsideration.

Affirmed in part, reversed in part, and remanded with directions.