(610 P.2d 662)
No. 51,436

STATE OF KANSAS, *Appellee*, v. THIGA MWAURA, *Appellant.*

Petition for review denied June 20, 1980.

Opinion filed May 9, 1980.

*Bill Spece*, of Topeka, for the appellant.

*Sally Davis Pokorny*, assistant district attorney, *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, for the appellee.

Before FOTH, C.J., REES, and PARKS, JJ.

FOTH, C.J.: The defendant was convicted after trial to the court of selling a used car without a valid "certificate of approval," or safety inspection, in violation of K.S.A. 1979 Supp. 8-1758(*a*)(6). He was fined $100, with the fine being suspended, placed on six months' unsupervised probation, and ordered to pay the $137.00 required to bring the vehicle into conformity with state safety regulations. He appeals, contending that the statute is invalid as applied to him under the Equal Protection clause of the Fourteenth Amendment and under the Contract Clause of Article I, Section 10, of the United States Constitution.

Both constitutional arguments are bottomed on the undisputed fact that when he sold the car on March 11, 1979, the purchasers agreed as part of the bargain to have the safety inspection performed themselves. After the $400 price was agreed upon the buyers asked if the car had been inspected; defendant said it had not, but for $5.00 more he would have the inspection made. The purchasers agreed to keep the $5.00 and have it done themselves.

The defendant agrees with the State that the seller's statutory duty is unequivocal. K.S.A. 1979 Supp. 8-1754 requires a certificate dated within 90 days of the sale, and goes on: "If no such certificate has been issued for any such motor vehicle, it shall be

the responsibility of the seller to obtain a valid certificate of approval for the motor vehicle in accordance with the provisions of this act    .    .    .    ." Criminal penalties are imposed on one who sells, and not on one who buys, a vehicle which has not passed inspection.

Defendant's Contract Clause argument is that the statute, by penalizing him for agreeing with his buyers that they, not he, will secure the certificate, impairs the obligation of his contract. This argument is without merit. The statutes were enacted prior to March 11, 1979, the date of the contract involved here. "[T]he settled doctrine is that the contract clause applies only to legislation subsequent in time to the contract alleged to have been impaired." *Munday v. Wisconsin Trust Co.,* 252 U.S. 499, 503, 64 L.Ed. 684, 40 S.Ct. 365 (1920). Accord, *Baker v. List and Clark Construction Co.,* 222 Kan. 127, 134, 563 P.2d 431 (1977). *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 57 L.Ed.2d 727, 98 S.Ct. 2716 (1978), relied on so heavily by defendant, does not alter this long settled doctrine. The legislation invalidated there operated on a pre-existing contract between a company and its employees; the issue was only whether the impairment was of such a magnitude as to offend the clause, not whether it was permissible to regulate a contract not yet made.

Defendant's equal protection argument is that treating sellers of used cars differently from buyers creates an impermissible classification. He says, and we agree, that the primary purpose of the inspection legislation is to insure that at least some of the vehicles on Kansas highways meet minimum safety standards. Rather than require inspection of all vehicles, the legislature has required inspection only when a car changes hands.

His first argument is that the classification between buyers and sellers bears no rational relationship to that legislative purpose. The general rule, recently noted in *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978), is that found in *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101 (1961):

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Several justifications for putting the burden on the seller of a

used car seem apparent to us. First, the seller is familiar with the car and has some idea of what is required to bring it up to standards; the buyer has no such knowledge. Second, it is the seller who hopes to profit from the transaction; in purely economic terms it seems eminently reasonable to put any financial burden accompanying the transaction on the one who will gain from it. Third, and most important, the buyer, having bought and paid for a used car that will not pass, may for financial reasons succumb to a near irresistible temptation to drive it without putting it into a safe condition, even though to do so is unlawful. Elimination of this temptation and the attendant risk to the motoring public is a clearly reasonable legislative purpose.

As part of his equal protection argument, defendant also argues that freedom of contract is a "fundamental right" and that any impingement on that right is therefore subject to "strict scrutiny" to ascertain whether it is justified by a "compelling governmental interest." Compare *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed.2d 600, 89 S.Ct. 1322 (1969), with *San Antonio School District v. Rodriguez*, 411 U.S. 1, 36 L.Ed.2d 16, 93 S.Ct. 1278 (1973).

We cannot promote defendant's right to sell a defective and unsafe used car to the level of the fundamental rights previously recognized by the United States Supreme Court, such as the right to vote and the right to travel. It has long been recognized that "[l]iberty of contract is not an absolute concept." *Hartford Accident Co. v. Nelson Co.*, 291 U.S. 352, 360, 78 L.Ed. 840, 54 S.Ct. 392 (1934), and numerous cases cited therein. Although the right to contract is a part of the liberty protected by due process guarantees, it is subject to such restraints as a state in the exertion of its police power reasonably may put upon it to safeguard the public interest. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391-2, 81 L.Ed. 703, 57 S.Ct. 578 (1937).

Defendant's freedom of contract argument was rejected as long ago as *Advance-Rumely Co. v. Jackson*, 287 U.S. 283, 77 L.Ed. 306, 53 S.Ct. 133 (1932). It was there held that the Uniform Sales Act's prohibition against a buyer's voluntary waiver of warranty violated neither the due process nor the equal protection clause of the Fourteenth Amendment. Thus, in the heyday of substantive due process, it was recognized that the legislature could constitutionally impose a burden on a seller of merchandise which

could not be contractually waived or assumed by the buyer. And *cf. Steele v. Latimer,* 214 Kan. 329, 521 P.2d 304 (1974), imposing on a landlord an implied warranty of habitability when renting residential property.

Our legislature has seen fit to impose absolute and nondelegable duties on one party to a contract in several different contexts. See, *e.g.,* K.S.A. 58-2553(*a*)(1) - (3) [identifying duties of a landlord which cannot be delegated to a tenant]; K.S.A. 58-2547 [prohibiting certain provisions in a rental agreement including waiver of rights under the Kansas Residential Landlord and Tenant Act, payment of the other party's attorney fees, and exculpation of any liability under the law]; K.S.A. 50-625(*a*) [providing that a consumer generally may not waive rights or benefits under the Kansas Consumer Protection Act]; K.S.A. 84-1-102(3) [prohibiting disclaimer of the obligations of good faith, diligence, reasonableness and care prescribed by the Uniform Commercial Code]; K.S.A. 84-4-103(1) [prohibiting disclaimer of a bank's responsibility for its own lack of good faith or failure to exercise ordinary care]; and K.S.A. 1979 Supp. 84-9-501(3) [prohibiting waiver or variation of certain rights of the debtor and duties of the secured party where a default occurs].

In our view the seller of an unsafe used car is in much the same position as the seller of adulterated meat. The argument that the legislature cannot punish the seller of either of these hazardous products without also punishing the buyer strikes us as, at best, fallacious.

Here, the legislature has imposed on the seller of a used car a nondelegable duty to see that it meets minimum safety standards. In our opinion this is a reasonable exercise of the police power, does not infringe on any fundamental right of the seller, and, applied to all sellers, does not deny any one of them the equal protection of the laws.

Affirmed.