**UNITED STATES of America, Plaintiff,**

v.

**John S. HUNTER, Ann L. Hunter, Richard H. O'Blasny, and Carol O'Blasny, Defendants.**

**Civ. A. No. 83–1410.**

United States District Court, D. Kansas.

May 29, 1986.

On Reconsideration Feb. 3, 1987.

Emily B. Metzger, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Kelly J. Rundell, H.E. Jones, Wichita, Kan., for Richard & Carole Blasny.

---

## OPINION AND ORDER

THEIS, District Judge.

This action, brought by the United States on behalf of the Small Business Administration, seeks judgment against the defendants on the basis of a personal guaranty executed by each of them. The matter is now before the Court on the United States' motion for summary judgment against the O'Blasnys, and on the United States' separate motion for summary judgment against the Hunters. The O'Blasnys have responded in opposition to the motion seeking summary judgment against them. The Hunters, whose attorney has been given leave to withdraw from the case, and who has not been replaced, have not responded to the motion seeking summary judgment against them. Because of the similarity of facts giving rise to these actions, the Court will address both motions in this one order.

## SUMMARY JUDGMENT STANDARDS

The Court is familiar with the standards governing the consideration of motions for summary judgment. Summary judgment is a drastic remedy to be applied with caution in order to preserve a litigant's right to trial. *Machinery Center, Inc. v. Anchor Nat'l Life Ins. Co.*, 434 F.2d 1, 6 (10th Cir.1970). To rule favorably on a motion for summary judgment, the Court must first determine that the matters on file regarding the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.*, 639 F.2d 671, 672 (10th Cir. 1981). Before summary judgment may be granted, the moving party must establish its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). Pleadings and documentary evidence must be liberally construed in favor of the party opposing the motion. *Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111, 113 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). If the facts support an inference that would permit the non-movant to prevail, summary judgment is inappropriate. *Thomas v. United States Dep't of Energy*, 719 F.2d 342, 344 (10th Cir. 1983). A party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial. *Dart Industries, Inc. v. Plunkett Company of Oklahoma, Inc.*, 704 F.2d 496, 498 (10th Cir.1983).

## FACTS

The relevant facts, which are not materially in dispute, are as follows. On April 11, 1977, Coral Refining Corporation [CRC], a Kansas corporation, executed a promissory note for $275,000.00 to Home State Bank of Kansas City, Kansas [HSB]. To further secure the loan, defendants John and Ann Hunter, and Richard and Carole O'Blasny executed their personal and unconditional guaranties of the note to HSB. The guaranties were a part and parcel of the loan transaction, and were executed on the same day as the loan and promissory note were.

On December 4, 1977, Richard O'Blasny left the management of CRC, and has not been involved in the management of CRC since that date.

On July 13, 1978, HSB assigned to the Small Business Administration [SBA] the guaranteed portion of the promissory note, the O'Blasny guaranty, and the Hunter guaranty. CRC made its last payment to SBA on the note on August 4, 1978. Although the note was apparently in default from that time on, not until September 17, 1981 did SBA exercise its option under the note and guaranties to accelerate the note and make demand for payment of the entire unpaid balance. Demand was made on the individual guarantors, who refused payment.

In 1980 (defendants' brief states 1981, but apparently that is a typographical error, as supporting affidavits and letters all refer to the previous year), SBA authorized a long term lease of the assets of CRC to

Kansas City Refining, Inc. [KCRI]. In 1981, SBA attempted to dispose of the collateral, but KCRI, acting within its rights, refused to voluntarily release the collateral. A Louisiana company, represented by Preston Williams, contacted the SBA regarding the purchase of the CRC assets. The offer and terms are evidenced by the notes of SBA official John Harris, attached to defendants' brief. The unnamed company was willing to purchase the plant for "at least the amount of the principal balance." However, it wanted to purchase the plant "clean," with KCRI out of the picture. Because KCRI, through its attorney, asserted that "no voluntary liquidation of the collateral will be acquiesced in by KCRI" and told the SBA that if it wished to assert its remedies under the promissory note with CRC, "it should do so by legal process," the sale to the Louisiana company was not consummated. Letter to John L. Kapnistos, District Counsel, SBA; from Arthur A. Glassman, attorney for KCRI; attached to defendants' brief as Exhibit 2.

As a result of this, defendants allege that SBA concluded that it would be easier to sell the collateral to a buyer acceptable to KCRI, albeit for an amount significantly lower than its market value, rather than engage in legal action necessary to disentangle the collateral from the long term lease to KCRI so that it could be sold to the Louisiana buyer.

The Court is uninformed as to whether SBA did in fact sell the collateral, and if so for how much. Apparently some sale was made, and SBA then sought the deficiency from the guarantors.

## ISSUES

Both parties agree that federal law governs a contract of a federally insured loan. In the absence of an applicable Act of Congress, federal courts may fashion the governing rule of law according to their own standards. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1942). State law may be adopted as the governing rule of law, and especially in areas such as con-

tract law where concerns of uniformity of law predominate, state law and the Uniform Commercial Code, adopted by virtually all of the states, should be the governing rule of law. Thus, the Court determines that the laws of Kansas will be the applicable rule of law in this case.

Defendants argue that SBA, by mismanagement, delay and waste, diminished the value of the collateral and disposed of it without regard to value. Specifically, defendants complain that SBA encumbered the collateral with a long term lease which diminished its market value. Then, when an offer to purchase the collateral for the amount of the principal indebtedness was made, the lease made it impossible for SBA to accept that offer without legal action to free the collateral from the lease. Rather than take such action, defendants charge that SBA took the easy way out and disposed of the collateral in a manner acceptable to the lessee, but for an amount significantly lower than its market value. SBA then sought the deficiency from the guarantors. Since the deficiency was incurred solely by reason of unilateral acts of SBA, defendants argue that SBA is estopped from asserting payment of any obligation against them, both according to the provisions of the UCC and according to general principles of law.

SBA counters that UCC Article 3 provisions relating to impairment of collateral, on which it assumes defendants rely, are not applicable to guaranties as guaranties are not negotiable instruments. SBA asserts that defendants' absolute and unconditional guaranty waived the defense of impairment of collateral by its terms, if such a defense were available.

The salient provisions of the guaranty contract are as follows:

The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the

Liabilities and the collateral, including, ... the following powers:

(b) To enter into any agreement of forebearance ... with respect to all or any part of the collateral ...,

(d) To consent to the substitution, exchange, or release of all or any part of the collateral ...,

(e) In the event of the nonpayment when due, of any of the Liabilities ... to realize on the collateral or any part thereof ... or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper....

The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers....

The obligations of the Undersigned hereunder, and the rights of the Lender in the collateral, shall not be released, discharged or any way affected, nor shall the Undersigned have any rights against Lender: ... by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral, unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Lender.

## I. MOTION FOR SUMMARY JUDGMENT AGAINST O'BLASNYS

### A. APPLICABILITY OF THE UCC

In their answer to plaintiff's complaint, the O'Blasnys asserted that plaintiff's actions diminishing the value of the collateral to which they could look for payment estopped the SBA from asserting payment of the obligation against the defendants based on the guarantee. SBA correctly notes that, while not specifically citing the statute, defendants seemed to be relying on K.S.A. § 84–3–606, which provides in pertinent part:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

SBA disputes the applicability of this provision, because Article 3 applies only to negotiable instruments, and a guaranty is not a negotiable instrument. SBA relies on *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.3d 246, 640 P.2d 343 (1982). There John Z. DeLorean, the famous car maker, was found liable as a guarantor for certain corporate debts to the Kansas State Bank & Trust. The court there zeroed in on the language "any party to the instrument" in 84–3–606(1) as being dispositive to the issue. Concluding that the contract in question was not a negotiable instrument (84–3–102(1)(e) defines "instrument" to mean "negotiable instrument"), but a separate contract of guaranty, the court concluded that the UCC provision was not applicable.

The O'Blasnys, pointing out that their guaranty is by its terms made subject to the agreement between the debtor and the lender, contend that the UCC is therefore applicable. They rely not only on 84–3–606, however, but also on Article 9 provisions relating to commercial reasonableness; specifically 84–9–504(3), which provides in pertinent part:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

The O'Blasnys argue that even if not technically applicable, the UCC's provisions should be applied by analogy. *United States v. Conrad Publishing Co.*, 589 F.2d 949, 953 (8th Cir.1978). The Court is aware of the great respect accorded the UCC, and agrees that its principles should be considered even when not technically applicable.

The Court must agree with SBA that a guaranty is not a negotiable instrument to be governed by Article 3. Nor is the Court persuaded that the guaranty can be bootstrapped into Article 3 by its "subject to" language. The Court does not find it necessary to dwell on the applicability of Article 3's "negotiable instrument" requirement. It is well recognized that 84–3–606 merely restates a much older rule of common law that impairment of collateral by a guarantee discharges the guarantor's obligation *pro tanto*. *DeLorean*, 7 Kan. App.2d at 256, 640 P.2d 343. So to the extent that the impairment of collateral rule should apply, the Court does not find that it is barred from so applying it.

The *DeLorean* court recognized this common law rule, but declined to apply it to the matter before them. In part that was due to the question of waiver, which the Court will discuss below. In large part, however, it also was due to the facts of that case, facts distinguishable from these. In *DeLorean*, the secured party was not in control of the collateral, DeLorean's agent was. Arguably, the blame for impairment lay with that agent. Here, O'Blasny had exercised no management over CRC for several years prior to the events in question. In fact, it was SBA who was in control and who both caused the long term lease to encumber the assets, and decided on the final sale of such assets. Thus, while this court concurs with the *DeLorean* court regarding the non-applicability of Article 3 to guaranties, based on a finding that they are not negotiable instruments, this Court does not feel bound by the *DeLorean* court's decision not to apply the common law rule of impairment of collateral to this case.

This instance is not a typical impairment of collateral case, though. In many ways, the question of the "commercial reasonableness" of SBA's actions may be more cogent, assuming without deciding that the Article 3 "impairment" language and the Article 9 "commercial reasonableness" language do in fact have substantially different meanings. The Court would note that the commercial reasonableness require-

ment of 84–9–504(3) is extended to guarantors by encompassing "guarantors" within the definition of "debtor" for Article 9 purposes. Kansas Comments to 84–9–105(1)(d), 84–9–504.

Thus the Court concludes that the UCC is applicable to this case, both technically through Article 9, and by implication through restatement of the common law rule of impairment of collateral in Article 3.

## B.  WAIVER

SBA argues that even if the provisions of the UCC are applicable, defendants have waived these defenses by the language of the guaranty. The Court would note first that the defense of commercial reasonableness under the UCC is not waivable. K.S.A. § 84–9–501(3)(b), which provides:

> (3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of section 84–9–504 and section 84–9–505) ... but the parties may by agreement determine the standards by which fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

> (b) subsection (3) of section 84–9–504 and subsection (1) of section 84–9–505 which deal with disposition of collateral.

Although the statutory language seems clear, there is less unanimity in the cases which address this question. Many of the cases cited to the Court by SBA allowing waiver of such defenses either do not deal with the UCC provisions or are not addressing the Article 9 commercial reasonableness requirement. Not cited to the Court, but troubling to it, is *United States v. Lattauzio*, 748 F.2d 559 (10th Cir.1984). There, the Tenth Circuit assumed that the UCC was the applicable governing law and that 9–504 concerning the sale of collateral in a commercially reasonable manner inured to the benefit of a guarantor. But they rejected, without discussion, the prop-

osition that guarantors could not, as a matter of law, waive the protections contained in 9–504. 748 F.2d at 562. That court did not discuss the antiwaiver rule of 9–501, but this Court does not doubt that they were aware of it. In the face of the clear statutory language, this Court can only reconcile that opinion by assuming that the case involved compulsory disposition of collateral pursuant to the requirements of 9–505. The Court notes that such compulsory dispositions are excepted from the antiwaiver rule of 9–501(3). Although the case does not specifically say so, this Court can only assume that was the reason for the otherwise seemingly inconsistent result in that case. In the present matter, no such compulsory disposition is at issue.

Otherwise, it is well accepted that such rights may not be waived. Barkely Clark, former Professor of Law at the University of Kansas School of Law and author of the Kansas Comments to Article 9 of the UCC, discussed this provision in *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 12.5[7][c] (1980). He cites a series of cases involving SBA which demonstrate how the surety can be released when the sale is commercially unreasonable. *United States v. Terrey*, 554 F.2d 685 (5th Cir.1977); *United States v. Willis*, 593 F.2d 247 (6th Cir.1979); and *United States v. Cawley*, 464 F.Supp. 189 (E.D. Wash.1979). He then writes: "Nor should exculpatory language in the guaranty agreement or note form be given effect, since § 9–501(3) precludes waiver of commercial reasonableness as a matter of public policy. This antiwaiver provision should protect consumer securities as surely as it protects the primary obligor," (citing *Willis*, where the court refused to give effect to the exculpatory language in standard SBA guaranty agreement).

■ In his 1985 supplement to the same treatise, Professor Clark assails a Georgia Court of Appeals decision as "a masterpiece of statutory destruction" for holding that a guarantor is not a debtor within the meaning of § 9–501(3), and therefore could waive the right to a commercially reason-able foreclosure sale in the continuing guaranty agreement. He charged that the court "totally ignores the definition of 'debtor' in § 9–105(1)(d)" and expressed hope that this decision "will remain as a minority of one." The Court unfortunately has uncovered other cases seeming to exclude guarantors from Article 9's protection afforded "debtors," or allowing waiver in spite of § 9–501(3)'s antiwaiver provision. *First Nat'l Park Bank v. Johnson*, 553 F.2d 599, 602 (9th Cir.1977); *United States v. Kurtz*, 525 F.Supp. 734, 746 (E.D. Pa.1981). The Court is convinced that the statutory language of Article 9, taken as a whole, compels the conclusion that Professor Clark's interpretation is the correct one. Therefore, the Court must find that the O'Blasnys could not, as a matter of law, have waived the defense of commercial reasonableness. *Accord United States v. Conrad Publishing Co.*, 589 F.2d 949, 952–53 (8th Cir.1978); *United States v. Chatlin's Department Store, Inc.*, 506 F.Supp. 108 (E.D.Pa.1980); *Federal Deposit Insurance Corporation v. Rodenberg*, 571 F.Supp. 455 (D.Md.1983).

The Court also notes that while 84–9–501(3) does not allow certain provisions to be waived, it does allow the parties to agree on "the standards by which the fulfillment of these rights and duties is (sic) to be measured." Neither side has raised this provision (indeed, SBA does not discuss Article 9 at all). The Court does not see it as relevant here, since nothing has been shown to the Court which could in any way be interpreted as setting standards for the fulfillment of those rights.

SBA asserts that other defenses may be waived by the guaranty agreement. Numerous authorities are cited to the Court to support this proposition. *See, i.e., Walter E. Heller & Co. v. Cox*, 343 F.Supp. 519 (S.D.N.Y.1972). The O'Blasnys have cited numerous authorities to the Court with contrary holdings. *See, i.e., Frederick v. United States*, 386 F.2d 481 (5th Cir.1967). The Court would note that the mere fact that a guaranty is an unconditional one is not sufficient to constitute a total waiver.

An unconditional guaranty only means that the creditor is not required to proceed first against the principal obligor, whereas he would be so required with a conditional guaranty. *United States v. Willis*, 593 F.2d 247 (6th Cir.1979). The defense of guarantor discharge due to impairment of collateral is a separate and distinct issue. *DeLorean*, 7 Kan.App.2d at 255, 640 P.2d 343.

In addition to noting that waiver is not accomplished by the mere fact of an "unconditional guaranty," the Court would also inform the parties that it will strictly construe any language purported to establish waiver. For reasons of public policy, this Court would agree with the Sixth Circuit, which said:

> In essence, we hold today that, as a matter of federal law, even the broad language quoted above will not be deemed to relieve the SBA of any and all responsibility to debtors in disposing of collateral securing its loans. This court cannot and will not sanction the kind of economic waste and financial hardship the Government's interpretation of this language has the potential to bring about. The guaranty agreement executed by defendants clearly conferred broad power and discretion upon the SBA to deal with the collateral upon ... default. However, it is our belief that the discretion conferred was never intended to be boundless and the powers conferred carry with them a duty to exercise them in a good faith attempt to maximize the proceeds of sale.

*United States v. Willis*, 593 F.2d 247, 255 (6th Cir.1979).

■ But this Court does not now find it necessary to decide whether the guarantors have waived these defenses. Rather, the Court finds that the commercial reasonableness issue alone leaves sufficient factual questions to preclude summary judgment. Therefore, without now reaching the question of waiver of the remaining non-Article 9 defenses, the Court finds that SBA's motion for summary judgment must be denied.

## II. MOTION FOR SUMMARY JUDGMENT AGAINST HUNTERS

As previously mentioned, the Hunters no longer are represented by counsel in this case, and therefore have not responded to SBA's motion for summary judgment against them. However, the Court notes that virtually all of the questions of fact and issues of law pertinent to the motion against the O'Blasnys are also pertinent to the Hunters. Therefore, the Court can not in good faith grant summary judgment against the Hunters when it has denied it against the O'Blasnys.

Accordingly, the motion for summary judgment against the Hunters is also denied. The Court directs the Clerk's office to make every attempt to mail a copy of this Order to the Hunter's current address. The Court also urges the Hunters to secure counsel to adequately represent them in this action.

IT IS THEREFORE ORDERED that SBA's motion for summary judgment against Richard and Carole O'Blasny is hereby denied.

IT IS FURTHER ORDERED that SBA's motion for summary judgment against John and Ann Hunter is hereby denied.

IT IS FURTHER ORDERED that the Clerk of the District Court make every effort to discover the current address of the Hunters, and mail a copy of this order to the same.

## ON RECONSIDERATION

On May 29, 1986, this Court denied plaintiff's motion for summary judgment. This matter now comes before the Court upon plaintiff's motion for reconsideration, which was filed on July 10, 1986. Such motions are consistently treated as motions to alter or amend pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which requires that they be filed within ten days. The Court must note that this motion was not filed timely, and therefore cannot be granted. However, because the United States raises serious questions in its motion

for reconsideration, the Court chooses to nevertheless address plaintiff's arguments in the hopes of putting to rest this rather simple, but highly controverted, matter.

The underlying facts of this case are somewhat involved, and will not be repeated here. They may be found in the Court's earlier opinion of May 29, 1986, which is appended to this Order. Briefly, the issue involves a personal guaranty signed by defendants on a corporate debt. Defendants seek release from that guaranty based upon their allegation that plaintiffs disposed of the underlying collateral in an unreasonable manner. In its earlier opinion, the Court discussed the Uniform Commercial Code [UCC]'s impairment of collateral provision found at K.S.A. § 84–3–606 (all portions of the Kansas UCC are codified in Chapter 84, wherein the UCC numbering is adopted; thus, this provision is Kansas' codification of UCC section 3–606, and so on for subsequent UCC provisions cited). The Court concluded that Article 3 of the UCC dealt with negotiable instruments only, that a guaranty was not a negotiable instrument, and that therefore 84–3–606 did not apply.

The Court then turned its attention to Article 9 of the UCC, which requires that the disposition of collateral be "commercially reasonable" in every aspect. K.S.A. § 84–9–504(3). The Court noted that for purposes of Article 9, the term "debtor" encompassed guarantors within its definition. See, K.S.A. § 84–9–105(1)(d), and the Kansas Comments thereto. Therefore, the provisions of 84–9–504(3) were found applicable. Most of the controversy centered over the defendants' purported waiver of the "commercial reasonableness" provisions of 84–9–504(3). Plaintiff presented to the Court the agreement which defendants had signed which purported to do just that. The Court, however, found K.S.A. § 84–9–501(3)(b) controlling. That section provides that subsection (3) of 84–9–504 may not be waived to the extent that it gives rights to the debtor and imposes duties on the secured party. The Court examined some cases with apparently contrary holdings, but concluded that the plain language of

the statute could not be ignored. The Court also noted that some leading commentators on the UCC had expressed their views that this was the only result which the Code allowed, and while acknowledging that some courts had held otherwise, concluded that such holdings were not reconcilable with the terms of the UCC.

Plaintiff now moves this Court for reconsideration, relying largely if not entirely upon a recent Tenth Circuit case, *United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843 (10th Cir.1986). That case, decided on February 28, 1986, has marked similarities to the one at bar. Moreover, while plaintiff graciously refrained from pointing out the obvious, the Court acknowledges that it sat on the Tenth Circuit panel that decided that case. By reference to this case, plaintiff suggests to this Court that the law in the Tenth Circuit is contrary to the interpretation of this Court in its May 29, 1986 opinion. The Court will now address that contention.

While this Court did sit on the panel in that case, a fact of life regarding appellate cases is that all of the facts are never there; only those developed on the record. Therefore, the Court cannot state with certainty that the two matters are in fact on "all fours." Indeed, the Court notes some significant legal differences. The Circuit's decision in *New Mexico Landscaping* was guided largely by a decision by the New Mexico Supreme Court on the very issue of waiving the defense of impairment of collateral. No parallel Kansas Supreme Court decision exists. While *New Mexico Landscaping* does discuss the "commercial reasonableness" provision found in UCC 9–504(3), it does not discuss the non-waiver provision of UCC 9–501(3)(b).

In light of authority cited by the plaintiff, the Court has reexamined the matter at great length. It remains convinced that the language of the statute allows for no other interpretation than that which this Court gave in its earlier opinion. The language of 84–9–501 is not vague or ambiguous. It is explicit. It allows for only one

interpretation: the provisions of 84–9–504(3) which deal with disposition of collateral, requiring that "every aspect of the disposition ... must be commercially reasonable" may not be waived. The Official UCC Comments adopt this interpretation: "Subsection (3) of this section contains a codification of this long-standing and deeply rooted attitude: the specified rights of the debtor and duties of the secured party may not be waived or varied except as stated." The Kansas Comments (1983) to the UCC likewise adopt this interpretation: "This subsection [9–501(3)] is intended to prevent the secured party from overreaching in the security agreement. The debtor's rights as set forth in Part 5 of Article 9 ... are given as a matter of public policy; they cannot be waived in the original documents." The Kansas Comments further note that pre-UCC Kansas case law is contra to 84–9–501(3)(b), *Watkins v. Layton*, 182 Kan. 702, 324 P.2d 130 (1958), but there is no question about what the law in Kansas is today. The Court in its earlier opinion referred to scholars' comments on this provision which also adopted this interpretation.

The Court is further convinced that, in interpreting these provisions, the Kansas Supreme Court would give effect to K.S.A. § 84–9–501(3)(b), and find that the requirement of "commercial reasonableness" contained in 84–9–504(3) may not be waived. The Court has not found any instance in which the Kansas Supreme Court has ruled on this particular issue, but it is not surprising that a question which merely asks if K.S.A. § 84–9–501(3)(b) means what it says has not found its way to that high court. The Kansas Supreme Court has reviewed the "commercial reasonableness" provision of 84–9–504(3) in *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (1982), wherein it indicated that it will firmly enforce that provision when the facts warrant (sale found not commercially reasonable, secured party's right to a deficiency judgment therefore limited). The Kansas Court of Appeals referred to 84–9–501(3)(b) in *State v. Mwaura*, 4 Kan.App.2d 738, 610 P.2d 662 (1980). Although that

case did not deal with UCC matters, the court referred to several statutory provisions indicating legislative intent to impose absolute duties on one party to a contract. The court cited 84–9–501(3)(b) as a statute which prohibited "waiver or variation of certain rights of the debtor and duties of the secured party...." *Id.* at 741, 610 P.2d 662. Thus, the Kansas Court of Appeals has implicitly indicated that it would interpret 84–9–501(3)(b) as this Court has.

The conclusion is inescapable that the plain language of Article 9 of the UCC vitiates plaintiff's argument. The language in the guaranty contract notwithstanding, commercial reasonableness cannot be waived. Plaintiff does not suggest how its desired result can be reached in light of these provisions. Perhaps the fact that the statutory language is so clear is the reason that plaintiff does not discuss it at all: its position is irreconcilable with the statute.

In short, plaintiff seeks reconsideration without even discussing the salient UCC sections on which the Court relied for its initial decision. The Court recognizes that this particular UCC issue has received some rather cavalier treatment by various courts; the Court acknowledged as much in its initial order where it discussed the leading treatises' and scholars' commentaries on this topic. But that fact is not license to this Court to disregard the plain language of statutory law. Courts exist to interpret law, but their discretion is not so broad as to allow them to virtually rewrite the laws they are interpreting. When a statutory provision is unclear, a court's interpretation of that provision is given much weight; but when the statutory language is clear and unambiguous, judicial fiat by way of a contrary interpretation is improper and a usurpation of legislative power. Plaintiff has failed to show the Court how its desired interpretation can be squared with the language of the UCC. Since the Court cannot in good faith ignore the letter of the law, plaintiff's interpretation must be rejected.

 

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration is hereby denied.