No. 100,312

DOUBLE M CONSTRUCTION, INC., *Appellant*, v. STATE
CORPORATION COMMISSION, *Appellee*.

(202 P.3d 7)

Opinion filed February 6, 2009.

*Jay L. MowBray,* of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Richmond M. Enochs,* of the same firm, was with him on the briefs for appellant.

*Patrice Petersen-Klein,* advisory counsel, of Kansas Corporation Commission, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On transfer from the Court of Appeals, Double M Construction, Inc. appeals from a district court decision upholding a Kansas Corporation Commission (Corporation Commission) order imposing liability for failure to properly investigate the location of a natural gas pipeline before excavating.

The parties submitted stipulated facts to the Corporation Commission. In its responsive brief, the appellee Corporation Commission refers to a number of facts outside the stipulations. Parties are bound to their stipulations, however, and a trial court or appellate court must render judgment based on those stipulated facts. *Klein v. Oppenheimer & Co.,* 281 Kan. 330, 336, 130 P.3d 569 (2006); *Shade v. Wheatcraft Industries, Inc.,* 248 Kan. 531, 541, 809 P.2d 538 (1991).

The stipulated facts are as follows:

Double M is an Oklahoma corporation. Double M was acting as a subcontractor for Double J Pipeline, LLC from September 26, 2006, through September 29, 2006. Double M provided excavation

service to Double J Pipeline in an area south of Mound Valley, Kansas, in rural Labette County.

Under the terms of the contract, Double J was the contractor. The contract provided that Double J was "to excavate under and around existing utilities." The contract also provided that Double J was to "spot and expose line crossing ahead of equipment." In addition, the contract contained the following clause: "Double M Construction Company, Inc. is not responsible for damage to any existing underground utility lines that have not been located and uncovered prior to our trenching."

On September 26, 2006, Double J Pipeline notified Kansas One Call that it would be excavating south of Mound City. Kansas One Call informed Double J Pipeline that all facilities would be marked by 12:01 A.M., September 29, 2006. Because of a mapping error in the Kansas One Call database, the facilities' owner did not receive notification of the intent to excavate. The error was discovered before Double M began any excavation.

Double J Pipeline placed a second call to Kansas One Call noting the error and notifying Kansas One Call of the proper excavation area. The mapping error was corrected, and Kansas One Call informed Double J Pipeline that all facilities would be properly marked by Tuesday, October 3, 2006. On September 29, 2006, Double J Pipeline directed Double M to excavate along the planned gas-gathering route.

.Kansas One Call's records indicated that Double M did not independently contact Kansas One Call to request utility locations or to provide notification of its intent to excavate. During the excavation, equipment owned and operated by Double M struck and ruptured a 20-inch high-pressure natural gas transmission line. Natural gas escaped through the rupture and ignited, resulting in the death of a Double M employee and property damage.

The Corporation Commission issued an order directing Double M to show cause why it should not institute punitive proceedings against Double M. Double M filed a response denying liability. The Corporation Commission entered an order finding Double M at fault and assessing a $25,000 penalty against Double M, which was half the statutory maximum for two violations. Double M filed

a timely petition for reconsideration under K.S.A. 66-118b and K.S.A. 77-529(a)(1), which the Corporation Commission denied. Double M then filed a timely petition for judicial review in Shawnee County District Court. The district court affirmed the Corporation Commission, and Double M took a timely appeal to the Court of Appeals. This court assumed jurisdiction on its own motion following Double M's motion to transfer.

Double M essentially raises two arguments in its brief. First, it contends that it was not the statutory excavator because it contractually delegated its liability to Double J Pipeline. Second, it contends that it is unfair to impose sanctions on Double M without also imposing sanctions on Double J Pipeline. It frames these arguments under a variety of headings, but they condense down to repetitions of the same issues, which are governed by basic rules of statutory interpretation.

Double M initially contends that the Corporation Commission and the district court erred in imposing statutory punitive measures against Double M after it had contractually assigned to Double J Pipeline responsibility for locating utilities and liability for any damages resulting from excavations.

This appeal asks the court to construe a statutory scheme in light of the stipulated facts. The standard of appellate review is de novo for cases decided by the district court based upon documents and stipulated facts. *In re Harris Testamentary Trust*, 275 Kan. 946, 951, 69 P.3d 1109 (2003). Interpretation of a statute is a question of law over which this court has unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the

statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008).

An administrative agency's interpretation of a statute is not binding, and the final construction of a statute always rests with the courts. *Denning v. KPERS*, 285 Kan. 1045, 1048, 180 P.3d 564 (2008).

As a general rule, a punitive statute should be strictly construed in favor of the accused, which simply means that words are given their ordinary meaning. Any reasonable doubt about their meaning is decided in favor of the accused. *State v. Kleypas*, 282 Kan. 560, 564, 147 P.3d 1058 (2006). This rule of strict construction, however, is subordinate to the rule that judicial interpretation must reasonably and sensibly give effect to the legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

The Kansas Underground Utility Damage Prevention Act, K.S.A. 66-1801 *et seq.*, governs the procedures for excavating in areas containing underground natural gas pipelines. This Act creates a statutory duty to the public to ensure the safety and integrity of underground utilities.

K.S.A. 66-1802(d) defines an "excavator" to be "any person who engages directly in excavation activities within the state of Kansas, but shall not include any occupant of a dwelling who: (1) Uses such dwelling as a primary residence; and (2) excavates on the premises of such dwelling." A "person" includes "any individual, partnership, corporation, association, franchise holder, state, city, county or any governmental subdivision or instrumentality of a state and its employees, agents or legal representatives." K.S.A. 66-1802(m). "Excavation" means "any operation in which earth, rock or other material below the surface is moved or otherwise displaced by any means," excepting agricultural tilling, certain railroad, road, or ditch maintenance, and fossil fuel exploration and production. K.S.A. 66-1802(c).

K.S.A. 66-1803 provides:

"An excavator shall not engage in excavation near the location of any underground facility without first having ascertained, in the manner prescribed in this act, a location of all underground facilities in the proposed area of the excavation."

K.S.A. 66-1804 requires that an excavator serve all operators of underground facilities in the area with advance notice of its intent

to excavate, except in emergency situations. The notice must be served at least 2 full working days, but not more than 15 calendar days, before the scheduled excavation start date. K.S.A. 66-1804(a).

K.S.A. 66-1805 establishes a single notification center for the state of Kansas, which is Kansas One Call. Each operator of an underground facility is a member of the notification center. K.S.A. 66-1805(a). The K.S.A. 60-1804 notification of intent to excavate shall be given by telephone at a toll-free number or by other communication methods approved by the notification center. K.S.A. 66-1805(b). The notification center is required to document the receipt of notices from excavators. K.S.A. 66-1805(d).

Violators of the Underground Utility Damage Prevention Act are subject to civil penalties and injunctive relief under K.S.A. 66-1,151. Factors that the Corporation Commission must take into account include the size of the business, the gravity of the violation, and the good faith in attempting to achieve compliance. K.S.A. 66-1,152.

The Corporation Commission concluded that Double M is clearly an "excavator" under the Underground Utility Damage Prevention Act. Double M challenged this conclusion in its appeal to the district court and renews that challenge in the current appeal. Double M apparently asks this court to find that it entered into a contract that transferred its statutory responsibilities to another party.

The statutory language applies clearly and unambiguously to Double M. Double M is a corporation, thus qualifying as a "person" under K.S.A. 66-1802(m). Double M engaged directly in excavation activities within the state of Kansas and was not the occupant of a dwelling where it conducted its excavation activities, thus qualifying it as an "excavator" under K.S.A. 66-1802(d). Double M was therefore required to notify in advance underground utilities of its intent to excavate. K.S.A. 66-1804(a); K.S.A. 66-1805(b). Double M failed to communicate with Kansas One Call, which is the authorized notification center. This failure to perform its statutory duty rendered Double M subject to penalties under K.S.A. 66-1,151. No statutory construction beyond reading the plain language of the statutes is required to reach this conclusion.

Double M nevertheless contends that a variety of equitable grounds should prevent the Corporation Commission from imposing penalties on it.

Double M argues that the Corporation Commission and the district court erred by failing to recognize that Double J Pipeline contractually agreed to assume responsibility for locating the underground utility lines: holding Double M responsible "punishes the party that 'touches the dirt,' " which is "no more fair or just as it would be to blame a blindfolded captive for his captor's act of leading him to tumble headfirst down a stairway."

When a statute positively governs the law in a particular situation, equitable considerations do not apply. *Pownall v. Connell*, 155 Kan. 128, Syl. ¶ 1, 122 P.2d 730 (1942); *Rambo v. Bank*, 88 Kan. 257, 259, 128 Pac. 182 (1912); *U.S.D. No. 207 v. Northland Nat'l Bank*, 20 Kan. App. 2d 321, 333, 887 P.2d 1138 (1994), *rev. denied* 257 Kan. 1096 (1995). In drafting the language of the statutory scheme, the legislature clearly intended the statute to govern "the party that touches the dirt." It is not the function of the courts to substitute their social and economic beliefs for the judgment of the legislature or to determine whether a statute is wise or necessary. *Blue v. McBride*, 252 Kan. 894, 915, 850 P.2d 852 (1993).

Furthermore, although Double M challenges the fairness of enforcing obligations on it rather than on its "captor," it fails to demonstrate that making a single telephone call to Kansas One Call would be burdensome. By fulfilling its statutory duty, Double M would have removed the blindfold that it elected to wear when it commenced excavation.

Double M next argues that the district court erred by failing to construe the statutory scheme in favor of the party subject to the penalty. Within this argument, Double M contends that it was the "innocent party" and that Double J Pipeline was an unpunished "guilty party." This argument again asks the court to rule contrary to plain and unambiguous statutory language, which is outside the standard of appellate review. See *State v. Paul*, 285 Kan. at 661-62. Double M articulates no argument suggesting that the statutory language is unclear or ambiguous.

Double M would have this court find that a corporation that specializes in excavation, enters into a contract to excavate, and then carries out an excavation is not really an excavator under the statute. It proposes that a creature that looks like a duck, walks like a duck, and quacks like a duck is not a duck if it contracts with a goose to assume the duties and liabilities of a duck.

Unless a statute expressly or implicitly allows for delegation, statutory duties imposed on one party generally may not be delegated by contract to another party. See *State, ex rel., v. City of Topeka*, 176 Kan. 240, 252, 270 P.2d 270 (1954). The Underground Utility Damage Prevention Act does not provide for delegation of duties. It appears sensible that the party actually undertaking the risk of excavation would be the party that must ascertain that no harm would result from the excavation. Allowing a party to delegate that task would promote the very situation that occurred in the present case.

Double M further contends that the Corporation Commission and the district court should have construed the statute in light of the common law. This argument is little different from the earlier arguments: it falsely posits that some construction is necessary beyond the plain language of the statute.

Double M cites case law holding that the employer or contractor may not delegate an inherently dangerous duty to an employee or subcontractor. This appears to be the rule in common-law tort actions. See, *e.g.*, *Balagna v. Shawnee County*, 233 Kan. 1068, Syl. ¶ 4, 668 P.2d 157 (1983). The legislature may, however, create statutory remedies independent of common-law remedies. See *Williamson v. Amrani*, 283 Kan. 227, 242, 152 P.3d 60 (2007). The plain statutory language clearly imposed a duty on Double M, a duty that Double M breached. Double M's reliance on the common law of negligence actions is not relevant to the sanctions imposed pursuant to the statute.

Double M repeatedly emphasizes that Double J Pipeline should have been punished for failing to call Kansas One Call. The stipulated facts reveal, however, that Double J Pipeline contacted Kansas One Call as required by statute. Double J Pipeline may have been negligent in failing to inform Double M of its communica-

tions with Kansas One Call, but that appears to be a matter for resolution between Double M and Double J Pipeline, not between Double M and the Corporation Commission.

Double M concludes its journey through this issue with the argument that applying the plain language of the statute produces injustice or an unreasonable result. It states that it was an "out-of-state subcontractor with no knowledge of the statute and no contractual responsibility to locate and protect the lines."

Parties are presumed to know that the legislature has chosen to regulate certain conduct. See *Cheek v. United States*, 498 U.S. 192, 199, 112 L. Ed. 2d 617, 111 S. Ct. 604 (1991) (every person is presumed to know the law); *State v. Young*, 228 Kan. 355, 360, 614 P.2d 441 (1980) (all persons are presumed to know general public laws of state where they reside, as well as legal effects of their acts); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 536, 646 P.2d 1091 (1982) (ignorance of law no excuse for violating law). Double M's asserted ignorance of the statute does not excuse its violation of the statute, and, as noted earlier, its contractual relationship with Double J Pipeline is irrelevant to enforcing the statute.

Double M insists that it was an "impossible act" to notify Kansas One Call of its intent to dig near a utility line. Double M does not explain, however, why it was impossible for it to call Kansas One Call or how it could have carried out an excavation without intending to carry out an excavation. That it was unaware that a pipeline was in the vicinity begs the question; excavators are required to contact Kansas One Call in order to determine whether pipelines are in the vicinity.

Double M raises a second issue pertaining to constitutional protection of the freedom to contract. It contends that it has a constitutional right to delegate away its duty to engage in safe excavation practices and that Double J Pipeline contractually agreed to assume certain safety precautions. Double M concludes that the United States Constitution protects it with virtually unfettered freedom to enter into contracts and the Kansas Legislature infringed on this freedom by not allowing Double M to contract away its statutory duties.

Double M's statutory duty is to the public and is designed to ensure the safety and integrity of underground utilities. It is not a private contractual matter. Double M has turned the constitutional argument on its head—it seeks to undo the legislature's freedom to legislate. The Underground Utility Damage Prevention Act was enacted in 1993. L. 1993, ch. 217, sec. 1. Double M and Double J Pipeline entered into their contract in 2006. Under the rubric of a constitutional freedom of contract, Double M argues that private parties may contractually agree to terms that violate existing statutes. A criminal defendant might similarly argue that he could commit murder and then enter into a binding contract assigning punishment to a third party.

The United States Constitution does not impose such a limitation on the legislature.

"It has long been recognized that '[l]iberty of contract is not an absolute concept.' *Hartford Accident Co. v. Nelson Co.*, 291 U.S. 352, 360, 78 L. Ed. 840, 54 S. Ct. 392 (1934), and numerous cases cited therein. Although the right to contract is a part of the liberty protected by due process guarantees, it is subject to such restraints as a state in the exertion of its police power reasonably may put upon it to safeguard the public interest. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391-92, 81 L. Ed. 703, 57 S. Ct. 578 (1937)." *State v. Mwaura*, 4 Kan. App. 2d 738, 740, 610 P.2d 662, *rev. denied* 228 Kan. 807 (1980).

The Kansas Legislature has the constitutional authority to impose a burden on a party that may not be contractually waived or assumed by another party. 4 Kan. App. 2d at 740-41. For example, the legislature may constitutionally impose on the seller of a used car a nondelegable duty to see that the car meets minimum safety standards. 4 Kan. App. 2d at 741. The legislature similarly has the constitutional authority to protect the lives and property around underground utilities.

Double M also submits that the Underground Utility Damage Prevention Act is vague and therefore constitutionally unsound. It contends that the definition of "excavator" found in K.S.A. 66-1802(d) is so vague as to foreclose reasonable understanding by parties subject to penalties under the statute.

The constitutionality of a statute is a question of law subject to de novo review by this court. *State ex rel. Six v. Kansas Lottery*,

286 Kan. 557, 562, 186 P.3d 183 (2008). A statute is presumed to be constitutional, and all doubts must be resolved in favor of its validity. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008).

When applied to a statute regulating a business, the standard for reviewing a vagueness-based challenge to constitutionality is " 'a common-sense determination of fairness' ": whether an ordinary person exercising common sense can understand and comply with the statute. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

Double M repeats its earlier arguments that Double J Pipeline was the party contractually responsible for ensuring that Kansas One Call was properly notified. Double M then concludes that the statutory reference to "any person who engages *directly* in excavation activities" is vague, because the word directly means "immediate[ly]" or "without a person or thing coming between."

The appellant's own proffered definition of the word suggests that Double J Pipeline was *not* an excavator under the statute. Double J Pipeline did not excavate; it hired another party "to come between" it and the excavation—Double M. It is a mystery how Double M could have driven equipment onto the excavation site and struck a gas pipeline without *directly* engaging in excavation. It is unclear how the legislature could have drafted the statute any more clearly without specifically naming Double M as the party required to notify Kansas One Call. Although Double M may have assumed that Double J Pipeline would attend to notification requirements, that assumption does not circumvent the clear, plain statutory language.

Double M finally argues that because Double J Pipeline notified Kansas One Call of the excavation plan, statutory requirements were satisfied and it was unnecessary for Double M to notify Kansas One Call.

The statute requires that an excavator—one *directly* engaged in excavation activities—notify Kansas One Call. The stipulated facts show that the excavator, Double M, did not make the required telephone call. Had Double M placed itself in contact with Kansas One Call, then the possibility would have existed that Kansas One

Call would have let Double M know about the initial mistake in locating the excavation site. It may be that Double J Pipeline should have informed Double M of the mistake, and it may be that subsequent tort or contract litigation between the two parties will transfer some or all of the liability to Double J Pipeline, but the statutory scheme places the burden of communication on the party directly engaged in excavating.

Double M did not comply with the plain, clear, and unambiguous language of the statute. Consequences of its unlawful excavation included a death and property damage.

We agree with the district court that the Kansas Corporation Commission acted within its statutory mandate, and we accordingly affirm.

McFARLAND, C.J., not participating.

STANDRIDGE, J., assigned.