NOT DESIGNATED FOR PUBLICATION

No. 121,119

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of S.K., a Minor Child.

MEMORANDUM OPINION

Appeal from Crawford District Court; MARY JENNIFER BRUNETTI, judge. Opinion filed November 1, 2019. Affirmed.

*Sarah A. Mills*, of Beezley Law, LLC, of Girard, for appellant natural mother.

*Michael Gayoso Jr.*, county attorney, for appellee.

Before ARNOLD-BURGER, P.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: The natural mother (Mother) appeals the district court's order terminating her parental rights to her daughter, S.K. The natural father is not a party to this appeal. Mother stipulated to a finding of unfitness after the motion to terminate her parental rights was filed and now raises three claims of error: (1) the district court's finding of unfitness was not properly supported; (2) the district court erred in finding she did not rebut the presumption of unfitness; and (3) the agencies assigned to help her failed to provide adequate support and assistance to carry out her case plan for reintegration with S.K. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2015, the Kansas Department for Children and Families (DCF) received a report alleging emotional abuse and physical neglect of S.K., born in 2015, by

1

Mother. A social worker from DCF made contact with Mother and S.K. at a shelter in Parsons. She noticed Mother's room was unclean and Mother appeared to have difficulty tracking the conversation.

Over the next several weeks, Mother had multiple contacts with law enforcement and they became concerned. The DCF social worker again contacted Mother to discuss these concerns; however, Mother did not appear to understand the concerns and refused to attend mental health treatment.

In December 2015, upon DCF's request, the State filed a petition to adjudicate S.K. a child in need of care (CINC) due to allegations of neglect, a lack of bond between Mother and S.K., Mother's lack of stable housing, and Mother's mental health issues and refusal to accept treatment or services to address them. Mother entered a no contest statement to the State's allegations. The district court adjudicated S.K. as a CINC and ordered S.K. placed in DCF's custody.

In April 2018, S.K. was still in DCF's custody out of Mother's home and with no real progress made towards reintegration; the State filed a motion for finding of unfitness and termination of parental rights. The State alleged five statutory factors the district court could rely on to terminate Mother's parental rights:

1. A failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family (K.S.A. 2018 Supp. 38-2269[b][7]);
2. A lack of effort on the part of Mother to adjust her circumstances, conduct, or conditions to meet the needs of S.K. (K.S.A. 2018 Supp. 38-2269[b][8]);
3. S.K. had been in an extended out-of-home placement as a result of actions or inactions attributable to Mother and one or more factors in K.S.A. 2018 Supp. 38-2269(c) applied (K.S.A. 2018 Supp. 38-2269[b][9]);

2

4.  Mother failed to carry out a reasonable court approved plan directed toward reintegration of S.K. into Mother's home (K.S.A. 2018 Supp. 38-2269[c][3]); and

5.  Mother failed to pay a reasonable portion of the cost of substitute physical care and maintenance based on her ability to pay (K.S.A. 2018 Supp. 38-2269[c][4]).

The State further alleged the statutory presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(6) applied based on S.K. being in a court ordered out-of-home placement for a cumulative period of more than two years during which Mother failed to successfully carry out a reasonable court approved reintegration plan, and there was a substantial probability Mother would not carry out such plan in the near future.

The motion to terminate Mother's parental rights was scheduled for trial in July 2018. The State informed the district court the parties intended to proceed "by stipulation to certain findings of fact and conclusions of law [by Mother], and an agreement to stay a finding of termination of parental rights for a period of six months, wherein [Mother's] right to visit [S.K.] would be reinstated at the discretion of KVC." Specifically, Mother would stipulate to the five statutory factors under K.S.A. 2018 Supp. 38-2269(b) and (c) and the statutory presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(6). Mother would also stipulate to the existence and probative value of the facts underlying the presumption of unfitness. See K.S.A. 60-414(a) ("if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates").

Mother's counsel confirmed the proposed stipulations. Counsel further informed the district court she explained to Mother that by making the stipulations "the Court would be able to find her unfit based on these facts but then there still remains the question of whether or not she can rebut that presumption." Mother indicated she

3

understood and agreed with counsel's statements and wanted to proceed by entering into the stipulations. The district court accepted her stipulations and found "clear and convincing evidence . . . [Mother was] unable to care for [S.K.]." The district court further found the statutory presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(6) applied. The district court then stayed the final termination decision for six months to allow Mother an opportunity to work the reintegration plan, for Mother's visits with S.K. to resume at KVC's discretion, and to present evidence to rebut the presumption at the next hearing.

In January 2019, the final termination hearing was held. Mother testified she had been living in her current home for almost a year; she had stable employment and was able to pay all her bills; and she had a bed, clothes, and other items for S.K. in her home. Mother discussed her visits with S.K. and their activities during their visits. Mother asserted she had no difficulty caring for S.K. during the visits but admitted KVC workers told her they thought some visits were not going well. Mother claimed she followed KVC's directions unless "they tell [her] something that isn't true."

Francis Willis, a KVC caseworker, testified she participated in Mother's case planning conferences and she observed some of Mother's visits with S.K. Willis did not believe Mother had completed her case plan tasks. Specifically, Mother had not completed parent-child interaction therapy, which was added to her case plan when visits resumed in July 2018. Willis discussed the importance of the therapy with Mother and how it would help address KVC's concerns about a lack of bonding between Mother and S.K. However, at her most recent case plan meeting—approximately two weeks before the January 2019 termination hearing—Mother still refused to complete the therapy.

Mother also failed to increase her visits with S.K. KVC informed Mother visits needed to increase in November 2018. The first attempted visit failed because Mother did not answer the door when the caseworker and S.K. arrived. Mother told Willis and

4

another KVC employee, Mandy Liecktieg, the scheduled times conflicted with her work hours. Willis and Liecktieg asked Mother what times would work better but Mother did not suggest any other times. Liecktieg testified the second attempted visit "did not go well," Mother was "very standoff-ish," and "started being very agitated with the increased visits." Willis and Liecktieg testified they did not believe it was in S.K.'s best interests to return to Mother's home. Both expressed concerns about Mother's inability to increase her visits with S.K., her unwillingness to attend the parent-child interaction therapy, and Mother's lack of bonding with S.K.

Willis was also concerned about the condition of Mother's home, which she described as cluttered. She described an incident in which Mother refused to comply with a visitation supervisor's instructions to change the channel on the television to stop S.K. from viewing inappropriate conduct for her age on the television. Willis was also concerned Mother's regular work hours were 2 a.m. to 9 a.m. because Mother told Willis she found a babysitter to watch S.K. during her work hours, but she would not tell Willis the babysitter's name. Like Willis, Liecktieg described Mother's home as cluttered. Liecktieg also expressed concerns about Mother's demeanor during visits. She further indicated S.K. did not appear excited about her visits with Mother. Additionally, Liecktieg was concerned about the dynamic between Mother and S.K. She felt there was little interaction during the visits. Liecktieg testified "[S.K.] just kind of goes and does what she wants and [Mother] just follows around the house." S.K. also referred to Mother by her first name and told Liecktieg "[she] is not my mom."

Additionally, Liecktieg testified Mother had attended some therapy and parenting classes in the past but did not fully complete them. When Liecktieg explained the importance of the parent-child interaction therapy, Mother responded, "she didn't need it." Liecktieg explained the parent-child interaction therapy was different from the prior therapy and classes Mother attended. It would be a more hands-on program involving both in-office and in-home work with the therapist who could directly observe Mother's

5

interactions with S.K. Liecktieg explained to Mother expanded visits were necessary for the therapy to work and she needed to increase her visitation hours. Two or three weeks before the termination hearing, Liecktieg received a call from a therapist Mother had contacted. The therapist told Liecktieg Mother would need to increase her visits for therapy to be effective. Liecktieg called Mother, told her she needed to increase her visits, and asked what times would work; Mother hung up on Liecktieg.

The district court found Mother failed to rebut the presumption of unfitness. It stated Mother "fell woefully short" of reestablishing a parental relationship with S.K. and she had "not made any efforts towards reintegration or towards even trying to rebut the presumption." The district court found there was a reasonable plan in place for reintegration, which Mother failed to carry out. Because Mother failed to rebut the presumption of unfitness, the district court found Mother was unfit by reason of conduct or condition rendering her unable to properly care for S.K. and the conduct or condition was unlikely to change in the foreseeable future. Therefore, the district court found termination of Mother's parental rights was in the best interests of S.K.'s physical, mental, or emotional health.

ANALYSIS

*Standard of review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the State may terminate parental rights for a child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the district court must find by clear and convincing evidence the parent is unfit "by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, we view all the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence, parental rights should be terminated. See *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. See *In re B.D.-Y.*, 286 Kan. at 705.

*Mother was unfit.*

The substance of Mother's argument does not address the district court's finding of unfitness. Instead, Mother argues: "These findings are unsupported by *the most current evidence* regarding the Mother. Mother had been given expanded visits in November 2018." (Emphasis added.) But Mother did not have *any* visits with S.K. for several months prior to her stipulation of unfitness in July 2018. And even though Mother claims her visitation was expanded, she fails to acknowledge the attempt to increase visits in November 2018 was unsuccessful.

Mother's contentions are undermined based on conflicting evidence in the record and have little persuasive value when considered in light of the record as a whole and her stipulation to a finding of unfitness. This court does not reweigh evidence or resolve evidentiary conflicts in reviewing the district court's decision. See *In re B.D.-Y.*, 286 Kan. at 705. Mother fails to explain how her assertions sufficiently show error in the district court's conclusion she did not rebut the presumption she was unfit as a parent by a preponderance of the evidence.

7

The fact remains Mother stipulated to the statutory presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(6). She further stipulated to five statutory factors under K.S.A. 2018 Supp. 38-2269(b) and (c) the district court could consider in determining whether she was unfit as a parent. Any of those factors may, but do not necessarily, establish grounds for termination of parental rights. See K.S.A. 2018 Supp. 38-2269(f). The district court stayed further proceedings—i.e., a final termination decision—for six months to allow Mother an opportunity to *rebut* the stipulated statutory presumption of unfitness. When Mother stipulated, she was informed her stipulations would have the legal force and effect of findings sufficient to establish her parental unfitness. Generally, parties are bound by their stipulations of fact and both trial and appellate courts must render judgment based on those facts. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 269, 202 P.3d 7 (2009).

In addition to stipulating to the statutory presumption of unfitness under K.S.A. 2018 Supp. 38-2271(a)(6), Mother stipulated to the facts underlying the presumption, the probative value of the presumed facts, the continued existence of those facts, and her burden to rebut them. See K.S.A. 2018 Supp. 38-2271(a); K.S.A. 60-414(a).

Mother is bound by her stipulations and the district court appropriately relied on them in reaching its decision. See *Double M Constr.*, 288 Kan. at 269. Mother's stipulations show she was unfit "by reason of conduct or condition" making her "unable to care properly for [S.K.]" and her circumstances were "unlikely to change in the foreseeable future." K.S.A. 2018 Supp. 38-2269(a). When viewed in the light most favorable to the State, a rational fact-finder could have found it highly probable by clear and convincing evidence, Mother's parental rights should be terminated. See *In re K.W.*, 45 Kan. App. 2d at 354.

*Mother failed to rebut the presumption of unfitness.*

The district court found Mother unfit based on her stipulations. Thus, Mother had "[t]he burden . . . to rebut the presumption of unfitness by a preponderance of the evidence" by proving she "[was] presently fit and able to care for [S.K.] . . . or [would] be fit and able to care for [S.K.] in the foreseeable future." K.S.A. 2018 Supp. 38-2271(b). In gauging the foreseeable future, we use "child time" as the measure. As recognized by K.S.A. 2018 Supp. 38-2201 et seq., children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re J.S.*, No. 120,193, 2019 WL 1967952, at *4 (Kan. App. 2019) (unpublished opinion) (citing *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 [Kan. App. 2013] [unpublished opinion] ["'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"]), *petition for rev. filed* May 29, 2019.

Mother generally asserts she rebutted the presumption of unfitness under the statutory criteria of K.S.A. 2018 Supp. 38-2271(b) based on her participation in case planning conferences, employment "for a considerable amount of time," and the fact she "had been living in her home for almost a year" and "had a bed and items for [S.K.] at her home." However, she provides little analysis or explanation of how those facts rebutted the statutory presumption of unfitness.

Mother cites to only one decision, *In re K.R.*, 43 Kan. App. 2d 891, 903, 233 P.3d 746 (2010), in support of her position. She contends, in one sentence with no further explanation, that *K.R.* stands for the proposition that there must be "professional testimony that a parent's condition of unfitness [is] unlikely to change in the foreseeable future." But this was not the finding in *K.R. K.R.* dealt with the failure to provide notice

9

to the Mother that a statutory presumption was going to be asserted, as well as the lack of *any* evidence in the record that Mother's status was unlikely to change in the foreseeable future. In fact, the evidence was to the contrary. There was testimony from Mother's therapist that Mother had fulfilled her required tasks and could become a good parent in six months. 43 Kan. App. 2d at 902. The facts in this case are distinguishable.

Here, the State met its burden under K.S.A. 2018 Supp. 38-2269(a) based on Mother's stipulations. Mother points to no independent testimony indicating she was presently fit and able to care for S.K. or would be fit and able to care for S.K. in the foreseeable future, which she had the burden to prove by a preponderance of the evidence. See K.S.A. 2018 Supp. 38-2271(b). Her claim "[t]he State offered no professional testimony that Mother's unfitness was unlikely to change" is contrary to Willis' and Liecktieg's testimony.

Mother's contention she completed her case plan tasks is contrary to the evidence in the record and the district court's factual findings. At the July 2018 hearing, the district court gave Mother six months to rebut the presumption and work toward reintegration with S.K. That same month, parent-child interaction therapy was added to her case plan tasks due to a lack of interaction, affection, and bonding between Mother and S.K. Mother responded, "she didn't need it."

Again, at Mother's most recent case plan meeting—approximately two weeks prior to the January 2019 termination hearing—Mother told Willis she saw no reason to complete the parent-child interaction therapy. At the termination hearing, Mother was asked if she would accept professional help to improve her bond with S.K.; Mother responded she would "[a]s long as it is actual help and not implied or somehow used against me." However, Mother was unable to identify a therapist, counselor, or program she felt would be acceptable to improve her bond with S.K. The record reflects Mother's visits with S.K. did not go well.

10

The district court found Mother "fell woefully short" of reestablishing a parental relationship with S.K. and making her home available as a suitable parental home for S.K. It further found "she [had] not made any efforts towards reintegration or towards even trying to rebut the presumption" and was "unable or unwilling to do so." Ultimately, the district court questioned Mother's truthfulness and expressed concerns about her inability to clearly explain why she failed to complete her case plan tasks. The district court's findings Mother failed to rebut the presumption of unfitness were supported by Willis' and Liecktieg's testimony; its observation of Mother's demeanor and concerns about her credibility are beyond the scope of review. See *In re* B.D.Y., 286 Kan. at 705.

*The agencies provided adequate support and assistance.*

It is unclear what further support, if any, Mother believes the agencies should have provided. Mother asserts:

> "KVC was aware that Mother did not have access to a vehicle. Mother testified that she felt alone working her case plan and requested support from KVC. KVC was aware that Mother worked the overnight shift and would need to sleep when she returned home. However, the first visits set up with the expanded visitation were in the morning at which time Mother was not available due to her need to sleep after working overnight."

Mother's argument is not persuasive. The record reflects attempts by the agencies trying to get Mother to attend parent-child therapy and to set up more times convenient to her for parenting time. Mother refused to cooperate.

*Termination of parental rights was in S.K.'s best interests.*

Mother next argues that the termination of her parental rights "was not in the minor child's best interest."

11

Upon making a finding of unfitness of the parent, the district court must consider whether "termination of parental rights . . . is in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). In making this decision, the court gives primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2018 Supp. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusted to the district court acting within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. We review a court's best-interests determination for an abuse of discretion, which

> "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Mother alleges the district court abused its discretion, yet she points to no specific factual or legal error. So we are left with determining whether any reasonable court would agree with the court's decision here. We find a reasonable person would agree Mother's parental rights should be terminated based upon the existence of substantial evidence that (1) reasonable efforts at reintegration had been unsuccessful, (2) Mother remained unfit to parent S.K., and (3) her conduct or condition rendering her unfit was unlikely to change in the foreseeable future. See K.S.A. 2018 Supp. 38-2269(a) and (g)(1); K.S.A. 2018 Supp. 38-2271(b).

Here, both Willis and Liecktieg felt it was not in S.K.'s best interests to be placed in Mother's home and offered specific and detailed reasons for their opinions. They

12

further testified about Mother's past unfitness and her continued lack of progress toward her case plan tasks. Their testimony showed the attempts at reintegration in the past six months had been unsuccessful. Mother failed to progress with her case plan tasks.

The district court's best-interests determination was a sound exercise of its discretion. S.K. had been in DCF's custody for more than three years at the time of the termination hearing. S.K. did not consider Mother to actually be her mother. Mother failed to follow through on case plan tasks to help strengthen her bond with S.K. Given S.K.'s young age—three years old at the time of the termination hearing—the six months in which Mother made no progress toward reintegration represented a substantial period of time in S.K.'s life, and in evaluating the foreseeable future, courts consider the passage of time from the child's perspective. See *In re J.S.*, 2019 WL 1967952, at *4. Moreover, S.K. had spent all but two months of her life out of Mother's custody.

In conclusion, finding no abuse of discretion on the part of the district court, we affirm.

Affirmed.